**Douglas Lance HAYDEN,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 09A05–0406–CR–301.

Court of Appeals of Indiana.

July 7, 2005.

Transfer Denied Sept. 14, 2005.

Teresa D. Harper, Bloomington, for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, J.

### STATEMENT OF THE CASE

Appellant–Defendant, Douglas L. Hayden (Hayden), appeals his convictions for three counts of sexual misconduct with a minor as Class B felonies, Ind.Code § 35–42–4–9, and two counts of sexual misconduct with a minor as Class C felonies, I.C. § 35–42–4–9.

We affirm.

### ISSUES

Hayden raises three issues on appeal, which we restate as follows:

1. Whether the trial court erred when it permitted the Superintendent of the Logansport Juvenile Facility to remain at the State's counsel table after Hayden moved for a separation of witnesses order;

2. Whether the trial court properly sentenced Hayden; and

3. Whether the State improperly withheld evidence from Hayden in violation of *Brady v. Maryland.*

### FACTS AND PROCEDURAL HISTORY

Hayden was employed as a Locations Count Officer (LCO) at the Logansport Juvenile Diagnostic Facility (the Logansport Facility) from January 1993 to February 2001. J.V., who was born on August 19, 1984, was an inmate at the Logansport Facility in April and May of 2000. Sometime between April 5 and April 24, 2000, while J.V. was in his unit, Hayden asked him if he wanted to clean the shower room. J.V. agreed, and asked Hayden if another boy could help him. Hayden said no. After cleaning the shower room, J.V. went into a bathroom stall and began cleaning a toilet near the shower room. As J.V. was cleaning the toilet, Hayden entered the stall and ordered J.V. to stand next to the wall in "search position." (Transcript p. 240). Search position means "[y]ou put your hands on the wall ... and spread your feet apart." (Tr. p. 240). J.V. got in the search position and Hayden came up behind him and asked if he could "jack off" in front of J.V. (Tr. p. 241). Hayden exposed his penis and rubbed it against J.V.'s backside. Hayden then turned J.V. around to face him and put J.V.'s hand on his erect penis. Hayden made J.V. rub his penis. Hayden then pulled down J.V.'s pants and inserted his finger inside J.V.'s anus. J.V. yelled in pain, and Hayden quickly pulled up J.V.'s pants and told him to continue cleaning the toilets.

Thereafter, on either May 4 or May 5, 2000, Hayden went inside J.V.'s room and told him to assume the search position. While searching J.V., Hayden grabbed J.V.'s penis twice.

Sometime between June 5 and June 8, 2000, Hayden signed out A.M., who was born on October 28, 1985, for cleaning duty. After Hayden and A.M. finished cleaning, Hayden took A.M. inside the cleaning supply closet and performed oral sex on A.M. A few days after this incident, while Hayden and A.M. were cleaning the kitchen, Hayden pulled down A.M.'s pants and performed oral sex on him. Thereafter, during an interview with A.M., Hayden asked A.M. if he wanted to touch his penis. A.M. then touched Hayden's erect penis.

A few days after the sexual encounters with Hayden, A.M. was transferred to the Plainfield Juvenile Correctional Facility. While at the Plainfield Facility, A.M. wrote

a letter to Hayden stating that he was "looking forward to doing what we will when I get out. [ ] I had fun. Want more fun." (State's Exhibit no. 22). Based on this letter, Logansport Facility officials conducted an investigation and relieved Hayden of his duties.

On March 30, 2001, the State filed an information charging Hayden with Count I, sexual misconduct with a minor as a Class B felony, I.C. § 35–42–4–9; Count II, sexual misconduct with a minor as a Class B felony, I.C. § 35–42–4–9; Count III, sexual misconduct with a minor as a Class C felony, I.C. § 35–42–4–9; Count IV, sexual misconduct with a minor as a Class D felony, I.C. § 35–42–4–9; Count V, sexual misconduct with a minor as a Class D felony, I.C. § 35–42–4–9; Count VI, sexual misconduct with a minor as a Class B felony, I.C. § 35–42–4–9; and Count VII, sexual misconduct with a minor as a Class C Felony, I.C. § 35–42–4–9.[1]

On June 17, 2003, a jury trial was held. At the close of the evidence, the jury found Hayden guilty of Counts I, II, III, VI, and VII. On August 27, 2003, the trial court held a sentencing hearing. Following the hearing, the trial court sentenced Hayden to ten years on Count I, ten years on Count II, four years on Count III, ten years on Count VI, and four years on Count VII. The trial court ordered the sentences to be served consecutively and suspended ten years of Hayden's thirty-eight year aggregate sentence.

Thereafter, on October 10, 2003, the trial court amended its sentencing order by clarifying that the original ten-year suspension should have been attached to Counts VI and VII, rather than taken against the aggregate thirty-eight year sentence. Specifically, the trial court ordered that of the ten years suspended, six years attached to Count VI and four years attached to Count VII. Following the trial court's amendment, Hayden's sentence remained twenty-eight years executed with ten years suspended to probation.

On September 29, 2003, Hayden filed a motion to correct error alleging that the State failed to produce certain evidence in violation of *Brady v. Maryland.* The trial court denied Hayden's motion on February 7, 2004.

Hayden now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Separation of Witnesses*

■ Hayden contends that the trial court violated its separation of witnesses order. Specifically, Hayden asserts that it was error for the trial court to allow Kellie Whitcomb (Whitcomb), Superintendent of the Logansport Facility, to sit at the State's counsel table before and after she testified.

Indiana Evidence Rule 615 requires a trial court to grant the request of a party for a witness separation order except for certain witnesses identified by the rule as not being subject to exclusion. *Julian v. State,* 811 N.E.2d 392, 400 (Ind.Ct.App. 2004) (citing *Fourthman v. State,* 658 N.E.2d 88, 90 (Ind.Ct.App.1995), *trans. denied*), *trans. denied.* "This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause." Ind.Evidence Rule 615.

In the instant case, subsequent to the trial court's separation of witnesses order

---

1. The trial court granted Hayden's Motion for Directed Verdicts on Counts IV and V.

and Hayden's Motion for Clarification as to the separation of witnesses order, the trial court ruled:

> [TRIAL COURT]: ... that the participation of [Whitcomb] as the State's designated representative at the counsel table is appropriate under Rule 615, Subparagraph 2, which allows an officer or an employer of a party, who is not an actual person, to be designated as a representative by its attorney. [Whitcomb] would appear to fall within that category as an employee of the State of Indiana. Counsel, anything else on that issue?
>
> [HAYDEN'S COUNSEL]: No, your honor.

(Tr. pp. 230–31).

Hayden now argues that Whitcomb is not "an officer or employee of a party that is not a natural person designated as its representative by its attorney." Evid.R. 615. In support of his position, Hayden maintains that Indiana only recognizes police officers or detectives as individuals who are exempt under Indiana Evidence Rule 615, subparagraph 2. *See Stafford v. State,* 736 N.E.2d 326, 330 (Ind.Ct.App.2000), *reh'g denied, trans. denied; Heeter v. State,* 661 N.E.2d 612, 615 (Ind.Ct.App.1996); *Fourthman,* 658 N.E.2d at 91. Although Hayden is correct that police officers and detectives have been found exempt from witness separation orders under subparagraph 2, there is nothing in the above cited cases that prevents other officers or employees working for the State of Indiana from being designated as the State's representative. Here, Whitcomb, working as Superintendent of a facility within the Department of Correction, is an employee of the State of Indiana. Therefore, we find no error in the trial court's decision to allow Whitcomb to be seated at the counsel table with the State.

## II. *Sentencing*

Next, Hayden contends that the trial court abused its discretion when it imposed consecutive sentences. Specifically, Hayden asserts that that the trial court failed to give proper weight to his mitigating factors. Additionally, Hayden argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

### A. *Standard of Review*

Sentencing decisions are within the trial court's discretion and will be reversed only for an abuse of discretion. *Powell v. State,* 751 N.E.2d 311, 314 (Ind. Ct.App.2001). In *Rodriguez v. State,* 785 N.E.2d 1169, 1179 (Ind.Ct.App.2003), *trans. denied,* we held that when considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive penalties. Trial courts may then consider deviation from this presumptive sentence based upon a balancing of factors, which must be considered pursuant to Indiana Code section 35–38–1–7.1(a), together with any discretionary aggravating and mitigating factors found to exist. *Rodriguez,* 785 N.E.2d at 1179. In order for a trial court to impose enhanced or consecutive sentences, it must (1) identify the significant aggravating factors and mitigating factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced the aggravators with the mitigators. *Bostick v. State,* 804 N.E.2d 218, 224–25 (Ind.Ct.App.2004). In addition to reviewing the traditional balancing of aggravating and mitigating factors, we have the constitutional authority, under Article VII, Section 6 of the Indiana Constitution, to review and revise sentences to ensure that they are proportionate in light of the nature of the offense and character of the offender. *See* Ind.Appel-

late Rule 7(B); *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003), *trans. denied.* Further, a single aggravating factor is sufficient to support the imposition of enhanced or consecutive sentences. *Jones. v. State*, 807 N.E.2d 58, 69 (Ind.Ct.App. 2004), *trans. denied.*

### B. *Weighing of Aggravators and Mitigators*

■ Hayden first argues that the trial court failed to give sufficient weight to his mitigating circumstances. In the present case, the trial court identified two mitigating circumstances: (1) Hayden's lack of a criminal record, and (2) Hayden's life of good deeds. Thereafter, the trial court found two aggravating circumstances: (1) the victims were incarcerated and unable to make decisions of their own free will, and (2) Hayden was in a position of trust and confidence with the victims. The trial court remarked that Hayden's breach of fiduciary trust was a "significant aggravating factor." (Tr. p. 529).

■■ As we have said, the weight to be given any one aggravating or mitigating factor is to be determined by the trial judge during sentencing. *Ballard v. State*, 808 N.E.2d 729, 733 (Ind.Ct.App.2004), *aff'd in part and vacated in part on other grounds by Ballard v. State*, 812 N.E.2d 789 (Ind.2004). Nevertheless, we must determine whether the trial court abused its discretion in balancing the aggravating and mitigating circumstances. *See Powell*, 751 N.E.2d at 314. Here, the trial court properly demonstrated that the aggravators outweighed the mitigators. Specifically, the trial court stated:

> This is not just, however, a crime against those two boys. It's a crime against the community as a whole. It's a crime that we all need to take stock of and look at and understand. The people that are here today are here because,

[Hayden], they support you. They know you. They've had the opportunity to observe you. They've had the opportunity to be a friend of yours, or a relative. Your brother is here from New York. All of these people have seen the good side of you. As the State tried to point out, of every single witness, none of them evidently have been exposed to what you stand here convicted of today, or the character that led you to that position. I think those two things co-exist. I cite those aggravating factors. I cite those aggravating factors both for, in looking at balancing the aggravating and mitigating factor[s], and I also cite them in looking at the issue of consecutive o[r] concurrent time. I think the aggravators outweigh the mitigators. I think there is no reason to minimize the character that you present, and I'm looking at both sides of that character, and I'm also looking at the circumstances of this particular crime and the situation that you were in .... You stand convicted of five counts. They are not, you know, they are not lower level felonies. You stand convicted of three B felonies. You stand convicted of two C felonies. Those are serious crimes.

(Tr. pp. 529–30). Based on the foregoing, we find that the trial court properly evaluated Hayden's aggravating and mitigating circumstances when it imposed consecutive sentences. *See id.*

### C. *Inappropriate Sentence*

■ Hayden's final argument is that the trial court's imposition of consecutive terms is inappropriate in light of his character. He asks that we remand his sentence with instructions to the trial court to order that all of his sentences be served concurrently. We reject Hayden's invitation to second-guess the trial court in this case.

As noted above, under Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender.

Here, for all three Class B felonies, the trial court imposed the presumptive term of ten years. *See* I.C. § 35–50–2–5. For each of Hayden's two Class C felonies, the trial court imposed the presumptive term of four years. *See* I.C. § 35–50–2–6. The trial court then ordered Hayden to serve all his sentences consecutively, with ten years suspended to probation.

Hayden first asserts that his sentence is inappropriate because maximum sentences should be reserved for the very worst offenders and offenses, and he claims that he is not one of the worst offenders. However, the trial court did not impose the maximum possible sentence because it imposed the presumptive terms on all of Hayden's felonies. Thus, Hayden's argument is misplaced.

Hayden also complains that the imposition of consecutive sentences is inappropriate because he has no criminal record and has lived an exemplary life through the military. However, a single aggravating factor is sufficient to support the imposition of enhanced or consecutive sentences. *Jones,* 807 N.E.2d at 69. Here, the trial court found two aggravating factors: (1) the victims were incarcerated and unable to make decisions of their own free will, and (2) Hayden was in a position of trust and confidence with the victims. In addition, although Hayden has a decorated career in the military, and such circumstance deserves some mitigating weight, "an honorable military service record does not excuse a sex crime." *Bluck v. State,* 716 N.E.2d 507, 515 (Ind.Ct.App.1999). Further, in evaluating the nature of the offenses, Hayden, who was in a position of trust as an Officer of the Logansport Facility, molested the victims several times while they were incarcerated and under his exclusive control. Based on all the circumstances, we cannot conclude that the imposition of consecutive sentences is inappropriate under Appellate Rule 7(B).

### III. Brady *Violation*

Last, Hayden contends that the trial court abused its discretion when it denied his Motion to Correct Error. In his Motion, Hayden argues that the State withheld certain evidence from him prior to trial in violation of the rules set forth in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Hayden asserts that the State failed to disclose that J.V. was incarcerated at the time of his testimony during the jury trial, and that J.V. had filed a civil lawsuit against the Indiana Department of Correction.

At the outset we note that a trial court has discretion to grant or deny a motion to correct error and we reverse its decision only for an abuse of that discretion. *In re Marriage of Dean,* 787 N.E.2d 445, 447 (Ind.Ct.App.2003), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

In *Brady,* the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97. The *Brady* doctrine applies to evidence impeaching the credibility of State's witnesses. *Carroll v. State,* 740 N.E.2d 1225,

1229 (Ind.Ct.App.2000), *trans. denied.* To prevail on a *Brady* claim, a defendant must establish: (1) that the evidence at issue is favorable to the accused, because it is either exculpatory or impeaching; (2) that the evidence was suppressed by the State, either willfully or inadvertently; and (3) that the evidence was material to an issue at trial. *Prewitt v. State,* 819 N.E.2d 393, 401 (Ind.Ct.App.2004), *trans. denied.*

■■■■■ Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 402. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* Evidence cannot be regarded as "suppressed" and the State will not be found to have suppressed material information when the defendant has access to the evidence before trial by the exercise of reasonable diligence. *Id.* However, "[w]hen police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight." *Id.* (quoting *Banks v. Dretke,* 540 U.S. 668, 124 S.Ct. 1256, 1263, 157 L.Ed.2d 1166 (2004)). So, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Id.*

■■ First, Hayden asserts that the State failed to disclose that J.V. was incarcerated at the time of his testimony. Our review of the record reveals that after the State submitted J.V.'s criminal history to Hayden on August 28, 2001, J.V. was charged with criminal confinement, intimidation, and pointing a firearm on August 19, 2002. The record then shows that J.V.

was incarcerated at the Madison County Jail on August 19, 2002, where he was awaiting a jury trial for the new charges, until he was released on bond on August 19, 2003. While incarcerated, J.V. was called to testify as a witness for the State in the present case on July 17, 2003. Hayden argues that the State's failure to disclose J.V.'s incarceration prior to trial precluded Hayden from impeaching J.V.'s testimony.

However, even if this information had been available to Hayden prior to trial, such information could not be used to impeach J.V.'s testimony. Indiana Evidence Rule 608(b) allows a party to impeach a witness based on specific instances of conduct probative of truthfulness or untruthfulness. Indiana Evidence Rule 609(a) allows the credibility of a witness to be attacked if there is evidence that the witness has been convicted of certain crimes or attempted crimes. Here, the charges the State filed against J.V. on August 19, 2002, were not specific instances of conduct probative of truthfulness or untruthfulness, nor was J.V. convicted of the charged crimes at the time he testified at Hayden's trial. Therefore, because Hayden has failed to establish that J.V.'s incarceration at the time of his testimony is impeaching evidence, we conclude that the State's suppression of this information does not amount to a *Brady* violation.

■■■ Next, Hayden claims that the State's failure to disclose J.V.'s civil complaint against the Indiana Department of Correction amounts to a *Brady* violation. In particular, Hayden asserts that the pendency of J.V.'s civil lawsuit during Hayden's jury trial is evidence of bias and prejudice and is appropriate impeachment evidence. Generally, "[i]f a witness in a criminal trial has a financial motive for testifying in a certain fashion, the jury should hear about those matters as they

are relevant evidence of credibility." *McCarthy v. State,* 749 N.E.2d 528, 533 (Ind.2001); *Domangue v. State,* 654 N.E.2d 1, 3 (Ind.Ct.App.1995). However, we must recognize that evidence cannot be regarded as "suppressed" and the State will not be found to have suppressed material information when the defendant has access to the evidence before trial by the exercise of reasonable diligence. *Prewitt,* 819 N.E.2d at 401; *see also Badelle v. State,* 754 N.E.2d 510, 527 (Ind.Ct.App. 2001), *trans. denied.*

Our review of the record reveals that on August 29, 2001, J.V.'s mother filed a civil complaint on J.V.'s behalf against the Indiana Department of Correction alleging that Hayden touched J.V. in a rude, insolent, and sexual manner. The Indiana Attorney General's office represented the Indiana Department of Correction. Between August 29, 2001, and June 17, 2003, the date of Hayden's jury trial, Hayden gave permission to the Indiana Attorney General's office to attend several depositions taken for the instant case. Hayden could have easily discovered that the presence of the Indiana Attorney General's office at the depositions was in a representative capacity concerning J.V.'s civil lawsuit. Because the existence of J.V.'s civil lawsuit could have been discovered by reasonable diligence, we find that the State did not suppress this information in violation of *Brady v. Maryland. See Prewitt,* 819 N.E.2d at 401.

### CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not violate its separation of witnesses order when it allowed Whitcomb to sit at the State's counsel table before after testifying; (2) the trial court properly sentenced Hayden; and (3) the trial court did not abuse its discretion in denying Hayden's Motion to Correct Error.

Affirmed.

SULLIVAN, J., and NAJAM, J., concur.