**In the Matter of G.R., a Child Alleged to be in Need of Services,**

**Bernard Leonelli and Mary Leonelli, Appellants–Petitioners,**

**v.**

**Noble County Department of Child Services, Appellee–Respondent.**

No. 57A03–0608–JV–363.

Court of Appeals of Indiana.

Feb. 27, 2007.

Jill N. Story, Fort Wayne, IN, Attorney for Appellants.

Dennis D. Graft, Avilla, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Mary Leonelli, maternal grandmother to G.R. ("Grandmother"), and Bernard Leonelli, step-grandfather to G.R. ("Step–Grandfather") (jointly, "the Leonellis"), appeal the denial of their motion to correct error and petition for kinship placement. We affirm.

### Issues

We consolidate and restate the Leonellis' issues as follows:

I. Whether the trial court abused its discretion in denying their motion to correct error; and

II. Whether the trial court erred in denying their petition for kinship placement.

### Facts and Procedural History

On or about September 20, 2004, G.R. spent the day with Grandmother and G.R.'s maternal aunt. Shortly after Grandmother returned G.R. to her mother, Rachel Rogers ("Mother"), G.R. was hospitalized with two broken arms, cuts, and bruises. That same day, G.R. was placed in foster care. On September 21, 2004, the Noble Circuit Court ordered that G.R. remain in foster care, and the Noble County Department of Child Services ("DCS")[1] filed a petition alleging G.R. to be a child in need of services ("CHINS"). On October 7, 2004, the trial court held an initial CHINS hearing, at which Grandmother was present. Mother and G.R.'s father ("Father") denied that G.R. was a CHINS.

On November 1, 2004, Grandmother contacted G.R.'s case manager and requested that G.R. be placed with her. The case manager advised Grandmother that Grandmother would have to pursue the issue with the trial court. On November 4, 2004, at the pre-trial conference, which Grandmother attended, Mother and Father admitted that G.R. was a CHINS. At Grandmother's request, the trial court ordered that Grandmother be considered for placement of G.R. In open court, the trial court scheduled a dispositional hearing for January 7, 2005.

On November 10, 2004, Foster Care Services, Inc. ("FCS"), sent a letter to Grandmother, advising her that DCS had assigned FCS to conduct a relative placement home study. Grandmother returned the required paperwork to FCS within a few days. FCS then attempted to schedule a home visit; however, its letters of November 18, 2004, January 4, 2005, and February 17, 2005, were sent to an incorrect address.[2] Although she was aware on November 4, 2004, of the hearing date,

---

1. DCS was formerly known as the Noble County Office of Family and Children.

2. These three letters were sent via regular U.S. mail to Grandmother at "1208 W. Grove St." instead of her correct address of "208 W. Grove St." *See* Appellee's App. at 37–39.

Grandmother did not attend the dispositional hearing on January 7, 2005.

On February 1, 2005, Grandmother contacted G.R.'s case manager and again requested that G.R. be placed with her. On February 3, 2005, the case manager contacted FCS to request a relative placement home study. That same day, Grandmother advised the case manager that she had contacted a private attorney and that she planned to attend a review hearing set for March 3, 2005. Grandmother did not appear at the hearing, at which the trial court again ordered that Grandmother be considered for placement.

In June 2005, G.R.'s case manager contacted Grandmother in an attempt to locate Mother. Grandmother informed the case manager that she had not been in touch with Mother because Grandmother's doctor recommended that she remove herself from the situation to avoid unnecessary stress. On July 13, 2005, the NCOFC filed a petition to terminate the parental rights of Mother and Father as to G.R. because of their failure to comply with various orders for reunification. On August 24, 2005, Grandmother left a voice mail for G.R.'s case manager indicating that she had heard G.R. was being adopted. The case manager left a voice message for Grandmother that same day, telling her that she would be willing to meet with Grandmother to discuss her interest in and concerns about G.R. Grandmother did not return the call.

In December 2005, Grandmother again contacted G.R.'s case manager to express her interest in having G.R. placed with her. A few weeks earlier, Step–Grandfather had been charged with domestic battery against Grandmother. On April 28, 2006, following a hearing, the trial court ordered the termination of Mother's parental rights as to G.R. Later that same day, the Leonellis filed a petition for grandparent visitation rights and a motion to intervene. The trial court set these motions for hearing on June 2, 2006. On May 16, 2006, the Leonellis filed a motion for opportunity to review juvenile files, which the trial court denied on May 23, 2006. At the June 2, 2006, hearing, the trial court determined that the Leonellis lacked standing to seek visitation. The Leonellis were not permitted to testify or present evidence at the hearing. The trial court denied their petition for visitation and failed to rule on their motion to intervene, in essence denying it.

On June 22, 2006, the Leonellis filed a motion to correct error with regard to the petition for visitation, motion to intervene, and motion to review juvenile files. The trial court denied the motion to correct error. On August 4, 2006, the Leonellis filed a petition for placement of child with kin, which the trial court denied shortly thereafter. The Leonellis now appeal.

### Discussion and Decision

#### I. Motion to Correct Error

The Leonellis claim that the trial court erred in denying their motion to correct error.[3] We will reverse a trial court's grant or denial of a motion to correct error only for an abuse of discretion. *Hayden v. State*, 830 N.E.2d 923, 930 (Ind. Ct.App.2005), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the

---

3. In their statements of the case, both parties explain that the Leonellis filed a motion to correct error with regard to the denial of their petition for visitation, motion to intervene, and motion to review juvenile files. The Leonellis incorrectly frame their appeal, however, as an appeal of the denial of the underlying petition and motions, rather than as an appeal of the ruling on the motion to correct error itself.

court or if the court has misinterpreted the law. *Id.*

 To seek visitation rights with regard to a grandchild, a person must have standing pursuant to the Grandparent Visitation Act, Indiana Code Sections 31–17–5–1 through –10 ("the Act"). Standing refers to whether a party has an actual demonstrable injury for purposes of a lawsuit. *In re J.D.G.*, 756 N.E.2d 509, 511 (Ind.Ct.App.2001). The primary purpose of standing is to insure that the party before the court has a substantive right to enforce the claim being made. *Id.* If a grandparent lacks standing, then his or her petition must be denied as a matter of law. *Id.*

Indiana Code Section 31–17–5–1 sets out several specific circumstances in which "a child's grandparent may seek visitation rights[.]" Indiana Code Section 31–9–2–77 defines "[m]aternal or paternal grandparent" for purposes of the Act as including: "(1) the adoptive parent of the child's parent; (2) the parent of the child's adoptive parent; and (3) the parent of the child's parent." In the instant case, the trial court determined that the Leonellis were not entitled to pursue visitation rights under the Act. The court stated, in pertinent part:

> I have a preference actually in these cases for placement with grandparents and with relatives and aunts and often direct the Department of Child Services to explore that because um, you know I guess I think that's better and it bothers me in some cases where there's not slots open for foster care for children who don't have relatives who are willing to step forward and they have to be institu-

tions [sic] when they could other wise [sic] be in foster care. But at this point the, again any rights for grandparent visitation ... would come through [Mother] and [Mother's] rights have been, were terminated prior to [the Leonellis' petition for visitation rights] being filed.

Tr. at 20–21.

We agree with the trial court's analysis. Grandmother does not fall within any of the three categories of grandparents described in Indiana Code Section 31–9–2–77. Prior to the termination of Mother's parental rights, Grandmother—then "the parent of the child's parent"—would presumably have had standing to seek visitation rights. Following the termination hearing, however, Mother was no longer G.R.'s "parent," and therefore Grandmother lost her status as the parent of G.R.'s parent. Grandmother primarily hangs her hat upon our decision in *In re Groleau*, 585 N.E.2d 726 (Ind.Ct.App.1992). In that case, we held that a paternal grandmother's visitation rights were not *extinguished* by the father's stipulated termination of his parental rights. *Id.* at 728. There, the grandmother had already been granted visitation rights when the termination occurred. These facts are significantly different from those in the instant case, where Grandmother did not file a petition for visitation rights until *after* the termination of parental rights. Therefore, we do not find *Groleau* persuasive here. In sum, at the moment Mother's rights were terminated, Grandmother no longer had standing to pursue visitation rights as to G.R.[4]

---

4. In their reply brief, the Leonellis argue that the trial court erred by failing to hold an evidentiary hearing, as required by Indiana Code Section 31–17–5–6 ("Upon hearing evidence in support of and opposition to a peti-

tion filed under this chapter, the court shall enter a decree setting forth the court's findings and conclusions.") However, the trial court determined—on the face of the pleadings, which showed that the Leonellis filed

■ While we agree with the trial court's conclusion that Step–Grandfather also lacked standing to pursue visitation rights as to G.R., we disagree with the court's reasoning. At the hearing on this matter, the parties and the trial court failed to distinguish Step–Grandfather as a step-grandparent, rather than a biological or an adoptive one. Rather, the court referred to the Leonellis as "grandparents" and denied the petition for visitation as to Step–Grandfather for the same reason it denied the petition as to Grandmother, because Mother's parental rights had been terminated prior to the filing of the petition. Tr. at 21. Even if the petition had been filed prior to the termination, however, Step–Grandfather would have had no standing to pursue visitation rights.

We have previously addressed the issue of whether a step-grandfather has standing to seek visitation rights under the Act. As we noted in *Maser v. Hicks*, 809 N.E.2d 429, 433 (Ind.Ct.App.2004), a step-grandparent does not fall within any of the definitions of "maternal or paternal grandparent" set forth in Indiana Code Section 31–9–2–77. We will not expand the plain meaning of the statute to include step-grandparents. *See id.* (holding that step-grandfather of CHINS did not have standing to seek visitation rights); *see also Nieto v. Kezy*, 846 N.E.2d 327, 335 (Ind.Ct. App.2006) ("If a statute is unambiguous, we must give the statute its clear and plain meaning.").

In sum, the Leonellis were not "grandparents" under the Act when they filed their petition for visitation, and thus the trial court did not abuse its discretion when it denied the motion to correct error

as to the petition. For the same reason, we also conclude that they lacked standing with regard to their motion to intervene and their motion to review juvenile files. Therefore, the trial court's denial of the motion to correct error as to these two motions was likewise not an abuse of discretion.

### II. Petition for Placement with Kin

■ In their petition for placement with kin,[5] the Leonellis relied upon the Indiana CHINS statutes, claiming that "before any permanent placement of [G.R.] is ordered, the court consider [sic] in a forum that allows the presentation of evidence and the involvement of extended family as mandated by the Indiana [CHINS] Statutes, and that therefore, [this] matter cannot be fully and properly litigated without the intervention of [the Leonellis] and consideration of them as a placement for said minor child." Appellants' App. at 52. Statutory construction is a matter of law reserved for the court and is reviewed de novo. *In re Infant Girl W.*, 845 N.E.2d 229, 242 (Ind.Ct.App. 2006).

The trial court's order on the Leonellis' petition for placement was a simple denial, without explanation. Presumably, the trial court's decision was based upon its prior determination at the June 2, 2006, hearing that the Leonellis were not "grandparents" under the Act. It follows that the trial court found them to lack standing under the CHINS statutes as well. The Indiana Code does not define "grandparent" for purposes of the CHINS statutes—Indiana Code Sections 31–34–1–1 through 31–34–25–5—and it appears that this Court has not yet specifically addressed the issue.

---

their petition for visitation *after* Mother's parental rights were terminated as to G.R.—that the Leonellis lacked standing to pursue visitation. Therefore, an evidentiary hearing was unnecessary.

**5.** The Leonellis did not file a motion to correct error with regard to this petition.

328

Indiana Code Section 31–34–4–2(a) states: "If a child alleged to be a child in need of services is taken into custody under an order of the court under this chapter, the court shall consider placing the child with a suitable and willing blood or adoptive relative caretaker, including a grandparent, an aunt, an uncle, or an adult sibling, before considering any other out-of-home placement." We conclude that because Mother's parental rights were terminated prior to the filing of the Leonellis' petition for placement, Mrs. Leonelli was no longer G.R.'s grandparent and the trial court was therefore not required to consider her for placement under 31–34–4–2(a) or any other CHINS statute. Mr. Leonelli was not a grandparent to G.R. under the CHINS statutes because he had never been her blood or adoptive relative.

In our view, the trial court's denial of the petition for placement with kin was proper.

Affirmed.

SULLIVAN, J., and SHARPNACK, J., concur.