## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 24 2015, 9:30 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel Hoskin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 24, 2015<br><br>Court of Appeals Case No.<br>49A04-1405-CR-192<br><br>Appeal from the Marion County<br>Superior Court<br><br>The Honorable Marc Rothenberg<br><br>Trial Court Cause No.<br>49G02-1211-MR-078411 |

**Bailey, Judge.**

# Case Summary

Daniel Hoskin ("Hoskin") was convicted of Murder, a felony,[1] and sentenced to fifty years imprisonment. He now appeals.

We affirm.

# Issues

Hoskin raises two issues for our review. We restate these as:

    I.    Whether the State withheld material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), so that Hoskin is entitled to a new trial; and

    II.    Whether there was sufficient evidence presented at trial to sustain Hoskin's conviction.

# Facts and Procedural History

On September 24, 2012, Charles Ray ("Ray"; Ray was sometimes called "Cosmo"), who was wheelchair-bound, and John Byrd ("Byrd") were both at home in an apartment on the bottom floor of a house on North Illinois Street in Indianapolis; they shared the apartment as roommates. Ray and Byrd had been drinking that day, and at some point Byrd had gone to a nearby liquor store to purchase some beer.

---

[1] Ind. Code § 35-42-1-1.

[5] At around 8:30 p.m., three men, whom Byrd knew as "Lil Will," "Nitra," and "Bill Bill" (the name by which Byrd knew Hoskin) walked up to the front door of the residence and knocked on the door. Byrd opened the door, and the three said they were there to talk to Ray. Byrd decided to take the beer he was drinking outside, and sat down on the back porch of the home; Lil Will followed Byrd to the back of the home. As Byrd walked out of the apartment, he heard one of the men saying something about shooting Ray.

[6] Byrd and Lil Will were near a porch behind the apartment for a few minutes, when Byrd heard a gunshot. At that moment, Lil Will began to walk back toward the front of the home. A few moments later, Byrd saw Hoskin and Nitra run from the front of the home toward the back alley; the two then ran north up the alley. Byrd returned to the front of the home, entered, and found Ray on the floor of his room with a gunshot wound to his head. Byrd called 9-1-1. Police and medical personnel arrived, but Ray could not be revived.

[7] Subsequent investigation by police, including a court-ordered statement from Byrd and interviews with Byrd's neighbors, led to the arrest of Hoskin and an individual whom Byrd identified as Nitra, Rodmitrell Jackson ("Jackson"). On November 16, 2012, the State charged Hoskin and Jackson with Murder.

[8] A joint jury trial was conducted on February 24, 25, and 26, 2014. At the conclusion of the trial, the jury found Hoskin guilty of Murder, as charged.[2] Hoskin initiated an appeal.

[9] On September 4, 2014, Hoskin filed a motion under Appellate Rule 37 and Post-Conviction Rule 2(2),[3] whereby he requested a stay of his appeal pending the filing with the trial court of a belated motion to correct error with respect to alleged violations of *Brady v. Maryland*. This Court granted that motion.

[10] On October 23, 2014, Hoskin filed with the trial court his verified belated motion to correct error. In his motion, Hoskin designated as exhibits probable cause affidavits from a number of cases in which Ray, the victim in the instant case, had assisted police by serving as a confidential informant ("CI") in numerous controlled buys of narcotics. Hoskin argued that the State's failure to disclose this information was a violation of *Brady*, and that this information was material to his case such that, had it been known, a different result was reasonably probable. The trial court disagreed, and denied the motion to correct error.

[11] This appeal proceeded.

---

[2] The jury found Jackson not guilty.

[3] This procedure, the *Davis/Hatton* procedure, is authorized by Ind. App. R. 37 "'to develop an evidentiary record for issues that with reasonable diligence could not have been discovered before the time for filing a motion to correct error or a notice of appeal has passed.'" *Peaver v. State*, 937 N.E.2d 896, 899 (Ind. Ct. App. 2010) (quoting *Schlabach v. State*, 842 N.E.2d 411, 418 (Ind. Ct. App. 2006), *trans. denied*), *trans. denied*.

# Discussion and Decision

## Motion to Correct Error

[12]   For his first contention on appeal, Hoskin argues that the trial court abused its discretion when it denied his belated motion to correct error. "A trial court has discretion to grant or deny a motion to correct error and we reverse its decision only for an abuse of that discretion." *Hayden v. State*, 830 N.E.2d 923, 930 (Ind. Ct. App. 2005), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it, or when the court has misinterpreted the law. *Id.*

[13]   Hoskin's motion to correct error, and his argument on appeal, rely on the U.S. Supreme Court's ruling in *Brady v. Maryland*, and upon *Brady*'s progeny. In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To prevail in a *Brady* claim, the defendant must establish (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Bunch v. State*, 964 N.E.2d 274, 297 (Ind. Ct. App. 2012), *trans. denied*.

[14]   Evidence is material within the meaning of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a

probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence relevant to impeachment is within the scope of evidence that may fall within the *Brady* rule. *Banks v. Dretke*, 540 U.S. 668, 675-76 (2004) ("When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight.").

[15] In support of his argument that Ray's role as a CI could have been used to impeach Byrd, Hoskin contends that the trial court abused its discretion when it found that information concerning the work performed by Ray as a CI on behalf of Indianapolis police was not material to Hoskin's defense. The State argues that Hoskin waived this issue because, despite Hoskin's arguments concerning the purported materiality of the information concerning Ray's work as a CI, "impeachment was not mentioned at all." State's Br. at 14.

[16] We first address the State's contention that Hoskin waived this argument. Hoskin's verified motion to correct error states, in part, "knowledge that Mr. Ray was a CI … creates a huge pool of potential, alternative suspects. It also would have given Mr. Hoskin *arguments as to why Mr. Byrd would have lied to police and falsely accused Mr. Hoskin* of this crime." App'x at 240 (emphasis added). The motion to correct error addressed issues related to impeachment of Byrd, and we accordingly find no waiver.

[17] Turning to the question of materiality, the evidence presented by Hoskin in support of the motion to correct error showed Ray's involvement as a CI in a

large number of criminal investigations, and the State does not dispute that this information was not provided to Hoskin in advance of trial. That does not settle the question of materiality, however. The question on that point is whether there was a reasonable probability that, had the State disclosed information regarding Ray's activity as a CI, a different result would likely have obtained at trial if Hoskin could have made effective use of the information regarding Ray's activities to impeach Byrd.

[18] Our review of the record reveals that, even without the information concerning Ray's work as a CI, Byrd's testimony was not given significant weight by the jury. Hoskin was tried together with a co-defendant, Jackson. Hoskin was placed at the scene not only by Byrd's testimony, but also by testimony from a neighbor, Harry Nunn, and by means of cellular phone records. The sole source of evidence connecting Jackson to the commission of the murder of Ray was Byrd's testimony; the jury found Jackson not guilty. The jury seems to have given relatively little weight to Byrd's testimony; it is unclear how further impeachment of Byrd would have aided Hoskin's defense.

[19] Further, Hoskin does not explain how Ray's work as a CI would have aided in efforts to impeach Byrd. Hoskin directs us to no information indicating that Byrd was aware of Ray's work as a CI, let alone how Byrd's knowledge of that information would have tended to make less plausible his testimony concerning Hoskin's role in Ray's murder.

[20]     We thus cannot conclude that the information concerning Ray's work as a CI was material to the question of effective impeachment of Byrd. In light of the facts and circumstances before it, and based upon our review of the record at trial, we cannot conclude that the trial court abused its discretion when it denied Hoskin's motion to correct error on the basis of a *Brady* violation.

## Sufficiency of the Evidence

[21]     We turn now to Hoskin's second contention on appeal, that there was insufficient evidence to support his conviction for Murder. Our standard of review in such cases is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. *Id.* We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

[22]     Here, Hoskin was charged with Murder. To convict Hoskin of Murder, as charged, the State was required to prove beyond a reasonable doubt that Hoskin knowingly killed Ray by shooting him with a gun, thereby inflicting mortal injuries upon Ray such that he died. *See* I.C. § 35-42-1-1(1); App'x at 39.

[23] Here, the evidence that favors the verdict is that on September 24, 2012, Hoskin and two other men arrived at the apartment Ray and Byrd shared. Nunn, one of Ray's and Byrd's neighbors, saw the three men arrive, and recognized one of them as Hoskin. Byrd testified that the three men knocked on the door of the apartment, and when Byrd answered the door they asked to see Ray. As Byrd and one of the men stepped outside, Byrd heard either Hoskin or the other man with him mention something about shooting Ray. Within a few minutes, Byrd heard a gunshot come from inside the apartment; the man with Byrd walked away, and Byrd saw Hoskin and another man running away from the home. Byrd immediately reentered his apartment, where he found Ray lying unresponsive on the floor with a gunshot wound to his head. A neighbor, Mark Brownlow ("Brownlow"), testified to hearing the gunshot, and testified to seeing fast-moving shadows running near his home, following the course Byrd saw Hoskin take.

[24] Hoskin argues that this is insufficient evidence from which to conclude that he was the shooter and thus committed Ray's murder. Assuming *arguendo* that Hoskin's argument on that point is correct, nevertheless there is sufficient evidence to establish the requirements of accomplice liability. The Indiana Code provides that "[a] person who knowing or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person … (3) has been acquitted of the offense." I.C. § 35-41-2-4. Mere presence at the scene of a crime is insufficient to make one an accomplice. *Griffin v. State*, 16 N.E.3d 997, 1004 (Ind. Ct. App. 2014). However, the

presence of an individual at a crime scene may be considered in conjunction with other factors that tend to show a defendant acted as an accomplice to a crime. *Id.* These factors are: (1) presence at the scene; (2) companionship with another at the scene; (3) failure to oppose commission of the crime; and (4) course of conduct before, during, and after occurrence of the crime. *Id.*

Here, Hoskin was present at a crime scene, in companionship with two other men. Hoskin and the two other men arrived at the apartment specifically looking for Ray, Byrd overheard either Hoskin or another individual saying they would shoot Ray, and Hoskin and the other individual remained in the apartment while Byrd and another man left the home. Finally, not only did Hoskin arrive with the men looking for Ray, Hoskin remained in the apartment with one other individual and Ray, and was seen fleeing the scene with that individual after Ray's murder.

Taken together, this is sufficient evidence from which a jury could reasonably conclude that Hoskin either shot Ray or was an accomplice to the murder and thus equally liable for the offense as charged. We accordingly affirm Hoskin's conviction.

# Conclusion

The trial court did not abuse its discretion when it denied Hoskin's motion to correct error on *Brady* grounds. There was sufficient evidence to sustain Hoskin's conviction for Murder.

Affirmed.

Baker, J., and Mathias, J., concur.