Leslie Howard WHITE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–0505–CR–383.

Court of Appeals of Indiana.

May 3, 2006.

Transfer Denied June 27, 2006.

Douglas R. Long, Anderson, for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant, Leslie Howard White (White), appeals his convictions of Count I, arson, as a Class B felony, Ind. Code § 35–43–1–1; Count II, burglary, as a Class B felony, I.C. § 35–43–2–1; and Count III, theft, as a Class D felony, I.C. § 35–43–4–2.

We affirm.

### ISSUES

White raises four issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the evidence was sufficient to sustain White's convictions;

(2) Whether the trial court properly instructed the jury; and

(3) Whether the trial court properly sentenced White.

### FACTS AND PROCEDURAL HISTORY

In August of 2003, Gavin House (House) bought a residence at 1809 Central Avenue, in Anderson, Indiana. Although he had not yet moved into the residence, House kept personal property such as furniture, clothes, beds, couches, refrigerator freezers, a television set, a radio, tools, and a washer and dryer there. House also kept his dog outside at the residence and visited several times each day.

On September 15, 2003, around 7:30 p.m., House stopped by the residence for approximately fifteen minutes. At that time there was no fire damage to the residence. House arrived at the residence around 10:00 a.m. the next morning, September 16, upon learning there had been a fire. While inspecting the burned residence House noticed a television and radio were missing. Kevin Heflin, a fire investigator with the Anderson Fire Department investigated the fire. He concluded the fire was started on the carpet and was set intentionally.

On September 15, 2003, the night of the fire, Brenda Alexander (Alexander), LaToya Toney (Toney), and White went to Jason Tharp's (Tharp) house, located next door to House's residence. Alexander and Toney were the only ones to enter Tharp's house. White waited outside.

During the visit to Tharp's house, Alexander and Toney heard glass break outside. They saw White coming out of House's residence and heard him say he was going to take property from that house. White proceeded to exit House's residence with a television and put it in Alexander's car. White returned to the residence and exited with a radio, which he also put into Alexander's car. White then stated he was going to burn down the house to destroy any DNA evidence left behind by a cut he sustained on his finger. Upon hearing this, Toney insisted she and Alexander leave the premises. Alexander drove off but picked up White within minutes around the corner. White sold the

television to Toney's boyfriend, although it remained in Toney's possession. Alexander kept the radio.

On October 1, 2003, the State filed an Information, charging White with Count I, arson, as a Class B felony; Count II, burglary, as a Class B felony; Court III, theft, as a Class D felony; and Count IV, habitual offender. On March 9 through March 14, 2005, a jury trial was held. At the close of the trial, the jury returned a verdict of guilty on Counts I, II, and III. White pled guilty to Count IV at a bifurcated phase of the trial. Subsequently, on April 12, 2005, a sentencing hearing was held. At the end of the hearing, the trial court sentenced White to twenty years on Count I with an enhancement of ten years for the habitual offender adjudication under Count IV, twenty years on Count II, and three years on Count III, with sentences to run concurrently.

White now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

White first contends the evidence presented at trial was insufficient to support his conviction. Specifically, White argues that (1) the State failed to prove beyond a reasonable doubt the structure White burned down was a dwelling as statutorily defined in I.C. § 35–41–1–10, and (2) the testimony of Alexander and Toney is incredibly dubious.

### A. *Standard of Review*

 Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the

evidence or assess the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Cox*, 774 N.E.2d at 1028–29. A judgment based on circumstantial evidence will be sustained if the circumstantial evidence alone supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind.2000).

### B. *Evidence of a Dwelling*

White first argues that the evidence was insufficient to sustain his convictions for arson and burglary. Specifically, White now contends that the State failed to prove beyond a reasonable doubt that the premise in question was a dwelling.[1] Arson is statutorily defined, in pertinent part, as a person who, by means of fire, knowingly damages a dwelling of another person without the other person's consent. I.C. § 35–43–1–1(a)(1). Burglary is statutorily defined, in pertinent part, as a person who breaks and enters the building or structure of another person, with intent to commit a felony in it. I.C. § 35–43–2–1. The burglary is a Class B felony if the building or structure is a dwelling. I.C. § 35–43–2–1(1)(B)(i). For purposes of the arson and burglary statutes, a dwelling is defined as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." I.C. § 35–41–1–10.

---

1. The State argues White stipulated that the structure he burned down was a dwelling. The State points us to White's counsel's statement in the record, "we are not raising the issues to whether or not it was a dwelling..." (Transcript p. 3). We do not interpret this to be a formal stipulation.

Accordingly, to convict White of arson, as a Class B felony, the State was required to show beyond a reasonable doubt that White, by means of fire, knowingly damaged House's dwelling, without his consent. *See* I.C. § 35–43–1–1. To convict White of burglary, as a Class B felony, the State was required to show beyond a reasonable doubt that White, broke and entered House's dwelling, with the intent to commit a felony in it. *See* I.C. § 35–43–2–1.

The Indiana supreme court has traditionally held burglary, like arson, to be an offense against the habitation. *Ferrell v. State*, 565 N.E.2d 1070, 1072 (Ind.1991). This is reflected in the burglary statute itself, which provides for greater penalties the closer the offense comes to endangering another's life or well-being. I.C. § 35–43–2–1. In determining what constitutes a dwelling, *Watt v. State*, 446 N.E.2d 644, 645 (Ind.Ct.App.1983), purports that the Indiana courts have given dwelling its plain and usual meaning. "The operative word defining 'dwelling' is a 'home'—a settled residence house for a family and their personal possessions." *Id.* In *Smart v. State*, 244 Ind. 69, 190 N.E.2d 650 (1963), our supreme court made a distinction between a dwelling, which is a home, and a place of human habitation, which is a place used for purposes other than a home, such as a house used for business purposes. *Id.* at 652–53.

■ In the instant case, the record clearly supports that House purchased the property for use as a permanent residence. At trial, House testified he was in the process of remodeling the house and spent time at the house several times a day. House had moved furniture, clothes, beds, couches, refrigerator freezers, a television set, a radio, tools, and a washer and dryer into the house. In a similar case, *Byers v. State*, 521 N.E.2d 318, 319 (Ind.1988), the victims were in the process of moving out when their home was burglarized. The defendant argued because they did not intend to sleep at that location the night of the break-in nor did they intend to sleep there for the week remaining on their lease, it was not a dwelling. *Id.* The *Byers* court noted, however, that because the victims intended to retain their right of dominion and return to the premises it should be considered a dwelling. *Id.* Although, in the instant case the evidence established that House was in the process of moving into the house, the difference between moving out and moving in is too tenuous with regard to the facts at issue to make such a distinction. As a result, it would defy logic to classify House's house as anything other than a dwelling for the purposes of the arson and burglary statutes. While it is uncertain when House and his family were to take up permanent residency in the house, it is clear that they intended to do so in the near future. Therefore, we find that the state proved beyond a reasonable doubt that the house was a dwelling. *See Cox*, 774 N.E.2d at 1028–29.

## C. *Incredible Dubiosity Rule*

Next, White contends that the testimonies of Alexander and Toney are inconsistent and incredibly dubious. Specifically, White maintains that there are inconsistencies between Alexander and Toney's testimonies. Alexander said she was upstairs in Tharp's apartment when she heard glass breaking, while Toney said they were outside when they heard glass breaking. Alexander testified that no lights were ever turned on inside House's house, while Toney testified White did turn on lights inside House's house. Alexander testified it was two to three minutes between the time when she and Toney left before seeing White again, whereas Toney

testified it was no more than forty-five seconds.

Additionally, with respect to the dubiosity of their statements, White alleges that (1) both Alexander and Toney were on probation at the time of the incident; (2) neither Alexander nor Toney ever actually saw a cut or blood on White even though both testified that White had indicated he had cut himself; (3) the stolen items ended up in Alexander and Toney's possession, not White's; (4) neither Alexander nor Toney was charged with a crime relating to the events; and (5) both Alexander and Toney's statements were inconsistent with other testimony.

Under the incredible dubiosity rule, "a court will impinge on the jury's responsibility to judge the credibility of the witness only when it is confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Stephenson v. State*, 742 N.E.2d 463, 497 (Ind. 2001), *reh'g denied, cert. denied*. (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)). "When a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed." *Stephenson*, 742 N.E.2d at 497–98. However, "we have recognized that the application of this rule is rare and is limited to cases where the sole witness' testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Id.*

In support of his argument, White focuses this court's attention not only on the inconsistencies of Alexander and Toney's statements, but also on the inherent improbability that any reasonable person could believe a person would break into a house, steal property, and set fire to the house solely for the benefit of others. Nevertheless, we find the incredible du-

biosity rule to be inapplicable. As we have previously clarified, the standard for dubious testimony is inherent contradiction, not contradiction between witnesses' testimony. *See Stephenson*, 742 N.E.2d at 499. By claiming contradictory testimony, instead of inherent contradictions within one witness' own testimony, White is actually asking us to reweigh the evidence and assess the witnesses' credibility. We decline this invitation.

## II. *Jury Instructions*

White next argues the trial court improperly instructed the jury, thus violating his due process rights under the Fourteenth Amendment to the United States Constitution, as well as Article I, § 19 of the Indiana Constitution. Specifically, he claims the State tendered jury instruction on "breaking" creates an impermissible mandatory presumption and binds the jury to find that a breaking occurred if White used, even the slightest force to gain unauthorized entry—even if the jury would have otherwise concluded the evidence was not sufficient to establish a breaking. Conversely, the State maintains that White's failure to object to the instruction waived this issue for appeal. Further, the State argues that since the trial court instructed the jury as to their duty to determine the facts and the law, the trial court empowered the jury as the fact finder, notwithstanding any mandatory language contained in the instruction.

It is well established by this court that instructing the jury is within the sole discretion of the trial court. *Gantt v. State*, 825 N.E.2d 874, 877 (Ind.Ct.App. 2005). Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in

the case. *Id.* A contemporaneous objection is generally required to preserve an issue for appeal. *Spears v. State*, 811 N.E.2d 485, 488 (Ind.Ct.App.2004). In reviewing the record we find no indication White objected to the proffered instruction, nonetheless he now claims the error was fundamental.

 The fundamental error doctrine is extremely narrow. *Howard v. State*, 816 N.E.2d 948, 955 (Ind.Ct.App. 2004), *reh'g denied.* Fundamental error is defined as an error so prejudicial to the rights of a defendant a fair trial is rendered impossible. *Id.* To qualify as fundamental, an error "must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Id.* (quoting *Spears,* 811 N.E.2d at 489 (Ind. Ct.App.2004)).

 We find the present case to be analogous to *Higgins v. State*, 783 N.E.2d 1180, 1186 (Ind.Ct.App.2003), *trans. denied.* The "burglary" instruction at issue reads: "breaking is proved by a showing that even the slightest force was used to gain unauthorized entry." (Tr. 152). White specifically alleges the "is" language in the burglary instruction creates an impermissible mandatory presumption. Thus, White would have us distinguish the instruction in the present case from the instruction given in *Higgins,* which reads: " 'the opening of a locked or unlocked door is sufficient' to support the 'breaking' element of residential entry." However, just as we declined in *Higgins* to hold that the mere inclusion of the word "is" in an instruction creates a mandatory presumption that violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, we decline to do so here.

 Furthermore, White argues the trial court was on notice from our decision in *Higgins* that instructions stating "certain evidence 'is' sufficient to establish an element of a crime, *should* not be given in the future so as to avoid any potential conflict with either the United States or Indiana Constitutions." *Id.* at 1187 (emphasis added). While we again implore the trial courts to adhere to such language, Article I, § 19 of the Indiana Constitution nevertheless states, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Thus, a mandatory instruction that binds the minds and consciences of the jury to return a verdict of guilty upon finding certain facts invades the province of the jury under this provision of Indiana's Constitution. *Higgins,* 783 N.E.2d at 1186. However, the record in the instant case indicates the jury was also given the following instruction: "the jury is given the right to decide both the law and the facts." (Tr. 154.) As in *Higgins,* giving an impermissible mandatory instruction does not necessarily constitute reversible error where it is accompanied by a contemporaneous instruction informing the jury that it is the judge of the law and the facts, as provided in Article I, § 19. *Id.* Thus, in the instant case we decline to find reversible error, let alone fundamental error. *See Howard,* 816 N.E.2d at 955.

### III. *Sentencing*

Lastly, White asserts he was improperly sentenced. In particular, White alleges that the trial court (1) failed to recognize certain mitigators and failed to apply proper weight to mitigators that were recognized; (2) improperly recognized aggravating factors that had not been determined by a jury to exist beyond a reasonable doubt; (3) did not properly find the aggravating circumstances outweighed the miti-

gating circumstances; and (4) pronounced a sentence that was inappropriate in light of the nature of the offense and character of the offender. As a result, White contends the trial court erred when it enhanced his sentence.

It is well established that sentencing decisions lie within the discretion of the trial court and will be reversed only for abuse of discretion. *Hayden v. State*, 830 N.E.2d 923, 928 (Ind.Ct.App.2005), *trans. denied.* In *Rodriguez v. State*, 785 N.E.2d 1169, 1179 (Ind.Ct.App.2003), *trans. denied*, we held that when considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive penalties.[2] Trial courts may then consider deviation from this presumptive sentence based upon a balancing of the factors which must be considered pursuant to I.C. § 35–38–1–7.1(a), together with any discretionary aggravating and mitigating factors found to exist. *Id.* For a trial court to impose a sentence, other than the presumptive, it must (1) identify the significant aggravating factors and mitigating factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced the aggravators with the mitigators. *Hayden*, 830 N.E.2d at 928. A single aggravating factor is sufficient to support the imposition of an enhanced sentence. *Id.* at 929. Therefore, even if a trial court improperly applies aggravating circumstances, a sentence enhancement may be upheld where there are other valid aggravating circumstances. *Rembert v. State*, 832 N.E.2d 1130, 1133 (Ind.Ct.App. 2005). In addition, Indiana Appellate Rule 7(B) gives us authority to review and revise sentences to ensure that they are proportionate in light of the nature of the offense and character of the offender.

Here, the trial court sentenced White to an executed sentence of twenty years for arson, as a Class B felony, enhanced by ten years for the habitual offender adjudication. White was sentenced to twenty years for burglary, as a Class B felony, and to three years for theft, as a Class D felony.

I.C. § 35–50–2–5 provides a presumptive sentence of ten years for a Class B felony, increase to twenty years with aggravators or a reduction to six years with mitigators. I.C. § 35–43–4–2 provides a presumptive sentence of one and a half years, increase to three years with aggravators or reduction to six months with mitigators.

### A. *Mitigators*

White first alleges that the trial court failed to give sufficient weight to certain proffered mitigators. In particular, he claims that the trial court should have given more weight to his health problems as mitigating factors.

[22, 23] In the instant case, our review of the record indicates the trial court recognized as mitigators White's physical and mental health issues and his guilty plea on the habitual offender charge. It is well established however, when a defendant offers evidence of mitigators, the trial court has the discretion to determine whether the factors are mitigating, and the trial court is not required to explain why it does not find the proffered factors to be mitigating. *Stout v. State*, 834 N.E.2d 707, 710 (Ind.Ct.App.2005), *trans. denied.* While the trial court recognized the physical and mental health of White as a mitigator, it does not apply a lot of weight to it, which the trial court is not required to

---

**2.** Public Law 71–2005, abolishing "presumptive sentences" in favor of "advisory sentences," is not applicable in the instant case since its effective date was April 25, 2005, whereas the sentence for this case was imposed on April 12, 2005.

do. We decline to change that steadfast practice. Upon review, we conclude that the trial court did not abuse its discretion with regard to the mitigators.

### B. *Aggravators*

Next, White relies on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied*, for support in alleging that the trial court relied on aggravating factors not pled and proven beyond a reasonable doubt to the jury. The record shows that the trial court recognized as aggravators White's history of criminal and delinquent activities and the existence of multiple victims and multiple counts in the instant charge.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held "other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely* clarified the statutory maximum to mean the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely*, 542 U.S. at 303, 124 S.Ct. 2531. In accordance with *Blakely*, our supreme court recognizes four proper ways for a trial court to enhance a sentence with aggravating circumstances: (1) prior conviction(s); (2) a fact found by a jury beyond a reasonable doubt; (3) facts when admitted by a defendant; and (4) in the course of a guilty plea where the defendant has waived *Apprendi* rights and stipulated to certain facts or consented to judicial fact finding. *Trusley v. State*, 829 N.E.2d 923, 925 (Ind.2005). Here, the trial court properly used White's criminal convictions to enhance his sentence. Therefore, a *Blakely* analysis, as to any other aggravators, is not necessary. Thus, it is clear White's history of prior convictions may be used to aggravate his sentence without having been found by a jury beyond a reasonable doubt. *See Ryle v. State*, 842 N.E.2d 320, 321 (Ind.2005).

### C. Weighing Aggravating and Mitigating Factors

With regard to the balancing, White asserts that the trial court failed to specifically balance the aggravators and mitigators. We agree that the trial court did not explicitly say during the sentencing hearing or in its Order that the aggravators outweighed the mitigators. Rather, in its Order the trial court said: "I come down on the idea of giving consecutive sentencing but give some consideration to the fact that there's already an aggravated sentence ..." (Tr. p. 182–83.) Nevertheless, it is apparent from our review of the transcript and the Order that the trial court did in fact weigh the aggravators and mitigators and found the aggravating factors outweighed the mitigating factors. While the trial court could have been more explicit, we cannot say it failed to properly weigh the aggravating and mitigating circumstances.

### D. *Appellate Rule 7(B) Analysis*

Lastly, White contends his sentence is inappropriate in light of the nature of the offense and character of the offender. Specifically, White alleges that his offenses are not among the worst offenses and he is not among the worst offenders. Thus, White asserts the trial court improperly sentenced him to an aggravated sentence of thirty years and requests us to revise and reduce his sentence.

Indiana Appellate Rule 7(B) gives us the authority to revise a sentence authorized by statute if, after due consider-

ation of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The presumptive sentence is meant to be a starting point for the trial court's consideration in determining an appropriate sentence. *Rodriguez,* 785 N.E.2d at 1179.

Our review of the record indicates White has a significant criminal history. Beginning in 1988, in Milwaukee, Wisconsin, White received one year probation for operating a vehicle without the owner's consent. In 1989, White was convicted of and fined for disorderly conduct and public intoxication. In 1990, White was sentenced to jail on charges of operating without financial responsibility and driving while suspended and was also charged with carrying a concealed weapon. In 1991, White was convicted of battery with a deadly weapon, a Class C felony, and sentenced to four years in the Department of Correction. In 1994, White pled guilty to intimidation, a Class C felony, carrying a handgun without a permit, a Class C felony, possession of cocaine, a Class D felony, battery, a Class A misdemeanor, and possession of marijuana, a Class A misdemeanor, and was sentenced to eight years at the Department of Corrections. Also in 1994, White was convicted of operating a vehicle without financial responsibility, operator never licensed, and driving while suspended resulting in a fifty day sentence, fines, and court costs. In 2001, White was charged with possession of a firearm by a felon. In 2002, he violated his parole. In 2003, he failed to appear for a charge of driving while suspended, a Class A misdemeanor. And in October 2003, White was charged in the present case. While incarcerated, White admits to having received numerous disciplinary write-ups, being placed in the super max security area for approximately three months and being a member of a gang, the Gangster Disciples.

Since 1988, White's criminal acts have become more pronounced and more severe. White is misguided if he thinks breaking and entering a home, stealing from that home, then after the burglary is complete, senselessly burning that home to the ground does not include him among the "worst of the worst." *See Payton v. State,* 818 N.E.2d 493, 498 (Ind.Ct.App. 2004) (emphasis added). Consequently, we conclude that the trial court properly sentenced White.

## CONCLUSION

Based on the foregoing, we find that there was sufficient evidence to sustain White's convictions; the trial court did not err when it sentenced White to thirty years; and the trial court properly instructed the jury.

Affirmed.

VAIDIK, J., and DARDEN, J., concur.