**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN W. KIMBROUGH, )<br><br>Appellant-Defendant, )<br><br>vs. )<br><br>STATE OF INDIANA, )<br><br>Appellee-Plaintiff. ) | No. 45A04-1106-CR-328 |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Kathleen Sullivan, Judge
Cause No. 45G04-1011-FA-48

**March 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

John W. Kimbrough (Kimbrough) appeals after a jury trial resulting in his convictions and sentence for four counts of class A felony Child Molesting.[1] Kimbrough presents the following restated issues for our review:

1. Was there sufficient evidence of penetration to support Kimbrough's child molesting convictions?

2. Did the trial court err in its instruction defining female sex organ?

3. Did the trial court abuse its discretion when sentencing Kimbrough?

We affirm in part, reverse in part, and remand.

A.D. (Mother) began dating Kimbrough in January 2009. After approximately six months of dating, Mother introduced Kimbrough to her three children: J.L., a daughter who was born in January 2003, A.D., a daughter who was born in July 2004, and A.D.L., a son who suffered from cerebral palsy. The couple and the children did many things as a family, including staying at hotels to swim at the pool and staying at a casino hotel. Kimbrough routinely drove the children to school and helped them with their homework. When Mother and Kimbrough ended their relationship in the spring of 2010, Mother continued to allow Kimbrough to take the children to school. Mother did so because she trusted Kimbrough and the children loved him. At the time, Kimbrough lived in the basement of his grandparents' house.

On the evening of October 29, 2010, Mother thought that J.L. appeared to be hiding something and acted scared. A.D. also acted like she did not want to talk, but ultimately told

---

[1] Ind. Code Ann. §35-42-4-3 (West, Westlaw current through 2011 1st Reg. Sess.).

Mother that her vagina was hurting. Mother asked the two if anyone had touched them "down there" and after Mother's questioning for a third time, J.L. and A.D. indicated that Kimbrough had touch them inappropriately. *Transcript* at 136. J.L. was the one who brought up Kimbrough's name. Kimbrough had picked the girls up from school early that day and had the children alone the previous weekend.

J.L. called her vagina a "private" and A.D. called hers a "cootie cat." *Transcript* at 148. Kimbrough would put baby oil on his penis prior to touching J.L. and A.D. A.D. said that Kimbrough would put his private area against hers and her sister's and that he would stick his private part in her "cootie cat." Kimbrough also licked A.D.'s vagina. While in the basement at Kimbrough's grandparents' house, Kimbrough put his private area up in A.D.'s "cootie cat." A.D. also observed Kimbrough putting his private area up in J.L.'s "cootie cat." When A.D. told Kimbrough to stop, he refused. Instead, Kimbrough would say no and instruct A.D. not to tell anyone what had happened.

Kimbrough also touched J.L. in her "private" and in the back with his private part. He would put his private part up in J.L.'s private part and would sometimes stick his penis in J.L.'s back side. J.L. observed Kimbrough touching A.D. Kimbrough touched J.L. more than once with his penis and used his fingers to touch J.L. inside her "private." J.L. saw Kimbrough masturbating and then ejaculating. Kimbrough asked J.L. to touch his penis and she complied. The touching occurred both at the hotel and in the basement of Kimbrough's grandparents' house.

On October 30, 2010, law enforcement officers were contacted and Mother took the girls to the emergency room for examination. Each girl was examined by Dr. Kathryn Watts,

3

and both girls told her that Kimbrough had rubbed his penis against their vaginas and touched their vaginas with his hands. Both A.D. and J.L. denied full penetration, or full insertion of the penis inside the vaginal vault. During the physical examination, Dr. Watts found a small break in J.L.'s hymen, but the break was not fresh because there was no bleeding. According to Dr. Watts, a break such as that can be found in cases of sexual abuse and can heal in one or two weeks. A.D. told Dr. Watts that her vagina was hurting. Upon examination, Dr. Watts discovered that A.D. had redness around her vaginal openings and about a one centimeter tear in her hymen. According to Dr. Watts while such an opening is not unusual, it can be found in cases of sexual abuse. Further, redness can also be caused by penetration. J.L. and A.D. were later interviewed by an officer at the family assistance bureau center.

On the evening of October 30, 2010, Kimbrough went to the residence of Sabrina Clark, his cousin. Kimbrough, who was scared, told his cousin to close the doors. Clark asked Kimbrough what was going on and he eventually said that he might be in trouble and that it was all his fault. Kimbrough also told Clark that he wanted to end his life. Clark pleaded with Kimbrough not to end his life. Police officers responded minutes later to Clark's residence and apprehended Kimbrough.

The State charged Kimbrough with four counts of class A felony child molesting and two counts of class C felony child molesting. At the conclusion of Kimbrough's four-day jury trial, he was found guilty as charged. The trial court did not enter a judgment of conviction on the two counts of class C felony child molesting. The trial court did enter judgments of conviction as to the remaining counts and sentenced Kimbrough to an aggregate sentence of eighty years imprisonment. Kimbrough now appeals.

4

1.

Kimbrough argues that there is insufficient evidence of penetration to support his convictions of two counts of child molesting by performing sexual intercourse.[2] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor reassess witness credibility. *Henley v. State*, 881 N.E.2d 639 (Ind. 2008). We consider only the evidence supporting the conviction and any reasonable inferences that can be drawn from such evidence. *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

"Sexual intercourse" is defined by statute as "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code Ann. § 35-41-1-26 (West, Westlaw current through 2011 1st Reg. Sess.). Thus, the State was required to prove penetration in order to obtain a conviction for the crime as charged. We have previously stated as follows:

> Moreover, a conviction for child molesting will be sustained when it is apparent from the circumstances and the victim's limited vocabulary that the victim described an act which involved penetration of the sex organ. The unfamiliarity of a young victim with anatomical terms does not make her incompetent to testify when the facts are explained in simple or childlike language which the judge and jury can understand. Also, a detailed anatomical description of penetration is unnecessary. Proof of the slightest penetration is sufficient to sustain convictions for child molesting. Indeed, our statute defining sexual intercourse does not require that the vagina be penetrated, only that the female sex organ, including the external genitalia, be penetrated.

*Smith v. State*, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002) (internal citations omitted).

---

[2] Kimbrough does not challenge the sufficiency of the evidence to support his convictions of two counts of class A felony child molesting by performing deviate sexual conduct with J.L. and A.D.

The present case differs from the evidence presented in *Spurlock v. State*, 675 N.E.2d 312 (Ind. 1996), where the evidence was deemed insufficient to support the conviction. In *Spurlock*, the victim testified that the defendant tried to put his penis inside of her, but that she was unsure if he did so. Here, J.L. and A.D. each testified that Kimbrough put his private part up in their respective "privates." Although the girls denied that penetration had occurred when asked by the doctor, their descriptions of the conduct involved are sufficient to support the jury's determination that penetration did occur. In addition, Dr. Watts testified that during her examination of each of the girls she found symptoms and physical evidence that could have been caused by sexual abuse or penetration. Weighing of the evidence and assessment of the credibility of the witnesses was for the jury to determine. *Henley v. State*, 881 N.E.2d 639. We decline Kimbrough's invitation to reweigh the evidence and reassess witness credibility. We find no error here.

2.

Kimbrough also argues that the trial court erred by instructing the jury on the definition of female sex organ. It is well established that instructing the jury is within the discretion of the trial court. *White v. State*, 846 N.E.2d 1026 (Ind. Ct. App. 2006). Jury instructions are to be considered as a whole and in reference to each other. *Id.* In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law; (2) is supported by evidence in the record; and (3) is covered in substance by other instructions. *Wal-Mart Stores v. Wright*, 774 N.E.2d 891 (Ind. 2002).

The trial court instructed the jury as follows in Final Instruction Number 5:

"'Female sex organ' includes any part of the female sex organ, including the vaginal vault, the labia or the external genitalia."

*Appellant's Appendix* at 72.  Kimbrough argues that this is an incorrect statement of the law without supporting analysis as to why this instruction incorrectly states the law. Consequently, this argument has been waived.  *See Hollowell v. State*, 707 N.E.2d 1014, 1025 (Ind. Ct. App. 1999) ("[f]ailure to present a cogent argument constitutes a waiver of that issue for appellate review.").

Waiver notwithstanding, we find that the instruction as given is not an incorrect statement of the law.  As previously stated, our statute defining sexual intercourse does not require that the vagina be penetrated, only that the female sex organ, including the external genitalia, be penetrated.  *Smith v. State*, 779 N.E.2d 111.  The instruction was not covered by other instructions.  Further, the decision to give the instruction was supported by Dr. Watts' testimony, which follows:

> The female sex organ is many parts that we would consider.  Goes all the way from the outer labia.  In the vaginal lips is what I guess people would call them in the law terms all the way up into the uterus.  So the vaginal vault, the clitoris.  It is all the area, outside and internal.

*Transcript at* 310.  "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict."  *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003).  The trial court did not abuse its discretion here as the instruction aids the jury in comprehending what must be penetrated in order to support the conviction.

3.

7

Kimbrough contends that the trial court abused its discretion when it sentenced him. In particular, Kimbrough appears to argue that the trial court considered improper aggravating circumstances and failed to give enough weight to the sole mitigating circumstance, i.e., his lack of a significant criminal history.

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. With the exception of our authority to review sentences under Ind. Appellate Rule 7(B), as long as a defendant's sentence is within the statutory range, it is reviewed only for an abuse of discretion. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances and the reasonable inferences to be drawn therefrom. *Id.* Circumstances under which a trial court may be found to have abused its discretion include: (1) failing to enter a sentencing statement, (2) entering a sentencing statement that includes reasons not supported by the record, (3) entering a sentencing statement that omits reasons clearly supported by the record, or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* Where a trial court has identified proper aggravating and mitigating circumstances, however, "[t]he relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse." *Id.* at 491.

When imposing a sentence for a felony, the trial court must enter a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing the sentence. *Anglemyer v. State*, 868 N.E.2d 482. A trial court abuses its discretion if its reasons and circumstances for imposing the sentence are clearly against the logic and effect

8

of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Hollin v. State*, 877 N.E.2d 462 (Ind. 2007). If the statement includes a finding of aggravating and/or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances. *Anglemyer v. State*, 868 N.E.2d 482.

The trial court noted that Kimbrough had recently violated the conditions of his pre-trial release granted in another court, the young ages of the victims, and that Kimbrough was in a position of trust with the victims and violated that trust over a two-year period. The trial court found those facts to be aggravating circumstances.

"A defendant's commission of an offense while he or she 'was in a position having care, custody, or control of the victim of the offense'' is a valid aggravating circumstance." Ind. Code Ann. § 35-38-1-7.1(a)(8) (West, Westlaw current through 2011 1st Reg. Sess.). Furthermore, while the charging information alleged that the offenses occurred between March 2008 and October 29, 2010, the trial court correctly noted that the evidence supported the jury's finding that the molestations occurred over a nearly two-year period between January 2009 and October 29, 2010. Last, even when the age of the victim is an element of the offense, extreme youth can support an enhanced sentence as a particularized circumstance of the crime. *Edrington v. State*, 909 N.E.2d 1093 (Ind. Ct. App. 2009); *Brown v. State*, 760 N.E.2d 243 (Ind. Ct. App. 2002). Here, the record establishes that the victims were approximately five years old and seven years old when the offenses first occurred. We find no abuse of discretion in the finding of these valid aggravating circumstances.

9

The trial court found as a mitigating circumstance that Kimbrough had no history of delinquency or criminal activity. Thus, the trial court did not err by failing to recognize a valid mitigating circumstance supported by the record. It is our duty, however, to "correct sentencing errors, *sua sponte*, if necessary." *Comer v. State*, 839 N.E.2d 721, 726 (Ind. Ct. App. 2005). Generally, a lack of criminal history is recognized as a substantial mitigating factor. *Loveless v. State*, 642 N.E.2d 974 (Ind. 1994). The sentencing range for a class A felony is "a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years. Ind. Code Ann. § 35-50-2-4 (West, Westlaw current through 2011 1st Reg. Sess.). After finding this substantial mitigating factor, the trial court, enhanced the advisory sentence by ten years for the class A felony convictions. Focusing on the appropriateness of the sentence and not the weight given to individual aggravating or mitigating factors, we find that the trial court abused its discretion. While we acknowledge the existence of the aggravating circumstances, an aggregate sentence of eighty years for a defendant with no criminal history is clearly against the logic and effect of the facts and circumstances before the trial court. Given the existence of this substantial mitigating factor, a sentence of twenty years on Counts I and II, with a consecutive sentence of twenty years for Counts I and IV, for an aggregate sentence of forty years is supported by the evidence. We reverse the trial court's sentencing order and remand to the trial court to enter an order imposing the sentence outlined above.

Judgment affirmed in part, reversed in part, and remanded.

RILEY, J., concurs.

MATHIAS, J., concurs in part and dissents in part.

10

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN W. KIMBROUGH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1106-CR-328 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**MATHIAS, Judge, concurring in part and dissenting in part**

I concur fully in the majority's resolution of Kimbrough's claims concerning the sufficiency of the evidence and the trial court's jury instructions. I also agree with the majority's conclusion that the aggravating factors identified by the trial court were supported by the record. However, I must part ways with my colleagues' conclusion that the trial court abused its discretion by imposing what the majority views as an inappropriately harsh sentence in light of Kimbrough's lack of criminal history.

As our supreme court explained in Anglemyer v. State, sentencing decisions rest within the sound discretion of the trial court and, while subject to our authority to review and revise sentences under Appellate Rule 7(B), sentences are reviewed only for an abuse of that

discretion. 868 N.E.2d 482, 490 (Ind. 2007), <u>clarified on reh'g</u>, 875 N.E.2d 218. A trial court may abuse its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. <u>Id.</u> at 490-491. As the majority correctly notes, under our current statutory sentencing regime, a trial court cannot be said to have abused its discretion in failing to properly weigh the mitigating and aggravating factors. <u>Id.</u> at 491. "[T]his is so because once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then 'impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana.'" <u>Id.</u> (quoting Ind. Code § 35-38-1-7.1(d)) (alteration in original).

In the case before us, the trial court entered a reasonably detailed sentencing statement setting forth valid aggravating and mitigating factors that are supported by the record, and Kimbrough raises no argument that the trial court overlooked any significant mitigating factors. Accordingly, the trial court did not abuse its discretion in imposing Kimbrough's sentence, and appellate review of the merits of the sentence is therefore limited to the grounds outlined in Appellate Rule 7(B). <u>See Anglemyer</u>, 868 N.E.2d at 491 (holding that it is on the basis of Appellate Rule 7(B) alone that a criminal defendant may challenge his or her sentence where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence that is

supported by the record, and the reasons are not improper as a matter of law, but has imposed a sentence with which the defendant takes issue). Because Kimbrough advances no argument under Appellate Rule 7(B) concerning the nature of the offense or his character, I would not reach the issue of the appropriateness of his sentence.[3]

But even assuming that it is proper to analyze Kimbrough's sentence under Appellate Rule 7(B) *sua sponte*, I would conclude that his sentence was not inappropriate. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. Alvies v. State, 905 N.E.2d 57, 64 (Ind. Ct. App. 2009) (citing Anglemyer, 868 N.E.2d at 491). This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Anglemyer, 868 N.E.2d at 491.

In that consideration however, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App.

---

[3] The majority correctly notes that it is our duty to correct sentencing errors, *sua sponte*, if necessary. See Comer v. State, 839 N.E.2d 721, 726 (Ind. Ct. App. 2005). But a request for sentence revision under Appellate Rule 7(B) is not truly a claim of sentencing error. Rather, it is a request for this court to exercise its constitutional authority to revise a lawfully entered sentence. See Anglemyer, 868 N.E.2d at 491 (providing that even where a trial court has acted within its discretion in imposing a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution, which are implemented through Appellate Rule 7(B), authorize independent appellate review and revision of a sentence imposed by the trial court). Kimbrough has made no such request here.

2007). The burden is on the defendant to persuade us that his sentence is inappropriate. Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007). Finally, although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).

Here, Kimbrough was convicted of four counts of Class A felony child molesting, for which the sentencing range is between twenty and fifty years, with an advisory sentence of thirty years. See Ind. Code § 35-50-2-4. Kimbrough received an above-advisory, but below-maximum, sentence of forty years on each count. The sentences on Counts I and II were ordered to be served concurrently. Likewise, the sentences on Counts III and IV were ordered to be served concurrently with each other, but consecutive to the sentences on Counts I and II. Accordingly, Kimbrough received an aggregate sentence of eighty years in the Department of Correction.

Based solely on Kimbrough's lack of criminal history, the majority revises Kimbrough's sentence to the minimum term of twenty years on each count, but retains the trial court's imposition of concurrent and consecutive sentences, resulting in an aggregate sentence of forty years in the Department of Correction. Although I agree that Kimbrough's lack of criminal history is a significant mitigating factor, I disagree that this factor, standing alone, warrants revision of Kimbrough's sentence, much less revision to the minimum sentence on each count.

Here, the record establishes that Kimbrough molested two victims. As a general

14

matter, the existence of multiple victims may justify the imposition of both enhanced and consecutive sentences. See Sanchez v. State, 938 N.E.2d 720, 723 (Ind. 2010); Tyler v. State, 908 N.E.2d 463, 468 (Ind. 2009); Granger v. State, 946 N.E.2d 1209, 1221 (Ind. Ct. App. 2011). Nevertheless, Indiana courts have occasionally revised sentences for child molestation even where there were multiple victims when other evidence in the record supported revision. See Sanchez, 938 N.E.2d at 723 (revising defendant's consecutive, enhanced sentences to be served concurrently where defendant molested two young victims, but molestations were isolated incidents and defendant had limited criminal history unrelated to the molestations and did not physically harm victims); Granger, 946 N.E.2d at 1221 (reducing defendant's executed sixty-year sentence for molesting two preteen victims to fifty years executed with ten years suspended in light of the defendant's "lack of prior criminal record, generally good conduct in the community separate from the offenses for which she was convicted, and lack of substantial physical harm to her victims").

Based on my review of the record, I am unconvinced that sentence revision is warranted in the case before us. With respect to the nature of the offense, the record establishes that Kimbrough molested two very young victims, seven-year-old J.L. and five-year old A.D. See Hamilton v. State, 955 N.E.2d 723, 727 (Ind. 2011) (noting that "the victim's age . . . suggests a sliding scale in sentencing, as younger ages of victims tend to support harsher sentences."). Kimbrough's victims were considerably younger than the eleven-year-old victims in Granger. See 946 N.E.2d at 1211-12.

Moreover, in molesting the girls, Kimbrough violated a position of significant trust. See Hamilton, 955 N.E.2d at 727 (noting that "[a] harsher sentence is also more appropriate

15

when the defendant has violated a position of trust that arises from a particularly close relationship between the defendant and the victim, such as a parent-child or stepparent-child relationship."). As the majority notes, while Kimbrough and Mother were dating, the couple and the children did many things together as a family, and Kimbrough routinely drove the girls to school and helped them with their homework. Indeed, Kimbrough developed such a close relationship with the girls that Mother continued to allow him to have contact with the J.L. and A.D. even after she and Kimbrough stopped dating.

Moreover, and as the majority recognizes, the trial court's conclusion that the molestations occurred on multiple occasions and over a time period spanning nearly two years was supported by the record. See Harris v. State, 897 N.E.2d 927, 930 (Ind. 2008) (concluding that the defendant's ongoing molestation of the victim, coupled with his abuse of a position of trust, was sufficient to justify the imposition of enhanced sentences). Thus, unlike the defendant in Sanchez, Kimbrough's molestations of J.L. and A.D. were not isolated incidents. See 938 N.E.2d at 722. I also find it noteworthy that Kimbrough continued to molest A.D. after she asked him to stop and that he instructed her not to tell anyone about the abuse.

With respect to Kimbrough's character, I agree that his lack of criminal history is a significant mitigating factor. But I do not believe that this factor, standing alone, renders Kimbrough's sentence inappropriate. Kimbrough's abuse of his position of trust with respect to J.L. and A.D. reflects very negatively on his character. Moreover, the record reflects that at the time of sentencing, there was an active warrant for Kimbrough's arrest for failure to appear on a driving while suspended charge, and Kimbrough was also facing charges of

Class B felony criminal confinement, Class C felony intimidation, Class D felony criminal confinement, and Class D felony residential entry. See Cotto v. State, 829 N.E.2d 520, 526 (Ind. 2005) (holding that a record of arrest alone does not establish the historical fact that a defendant committed a crime, but that it may be relevant to the assessment of the defendant's character in terms of the risk that he will commit another crime). Additionally, Kimbrough violated the terms of his pretrial release granted by another court in a separate case.

In light of this evidence concerning Kimbrough's character, combined with the aforementioned evidence concerning the nature of the offense, specifically the presence of multiple victims, their young ages, the ongoing nature of Kimbrough's crimes, and his abuse of a position of trust, I cannot agree with the majority that revision of Kimbrough's sentence is warranted, particularly revision to the minimum sentence for each of Kimbrough's four Class A felony convictions and the resulting forty-year aggregate sentence. Mindful of the deference we owe to the trial court in sentencing matters, I would affirm the trial court's eighty-year aggregate sentence for Kimbrough's four Class A felony child molesting convictions.