**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOHN P. WILSON**
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOUGLAS HOBBS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1406-CR-247 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JOHNSON CIRCUIT COURT
The Honorable K. Mark Loyd, Judge
Cause No. 41C01-1308-FD-580

**January 23, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Douglas Hobbs appeals his conviction of Class D felony theft.[1]  He asserts the evidence was insufficient to support that conviction.  We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 21, 2013, Walmart Loss Prevention Officer Brice Link noticed a customer, later identified as Angela Napier, who was shopping with two children and "quick-selecting merchandise" in the hair accessories section.  (Tr. at 72.)  Link had learned in loss-prevention training that "quick-selecting" merchandise[2] is a sign that a customer may shoplift, so he began to watch Napier.  Napier placed items in the cart "next to her purse."  (*Id*. at 74.)  Napier then proceeded to the light bulbs aisle, where she selected some bulbs and concealed both the bulbs and the hair accessories in her purse.  Napier headed to the electronics section of the store, where she met Hobbs, and then they proceeded to the grocery section of the store.  In the baking aisle, Hobbs milled around browsing at items, while Napier "began to take the merchandise from her purse and take the backings and UPC's off the merchandise."  (*Id*. at 83.)

When Link saw Napier removing the backings, he called the police.  Greenwood Police Officer James Brian Long was dispatched to the scene.  Officer Long parked his marked patrol car outside the grocery entrance of Walmart and waited for further instruction from dispatch regarding the customers he was to intercept.

After Napier put the altered merchandise back into her purse, Hobbs, Napier, and her

---

[1] Ind. Code § 35-43-4-2(a) (2009).
[2] Link explained "quick-selecting" as "selecting very fast and I mean not really showing any regard for price whatsoever."  (Tr. at 72.)

two children proceeded to a cash register, where they put unaltered merchandise from the cart onto the conveyor belt. After the cashier rang up their items, Napier did not have sufficient funds to pay for all of those items, so she began to return items to reduce the price to an amount she could pay.

While Napier was trying to pay, Hobbs walked outside, noticed Officer Long's police car outside the door, and returned to the checkout lane where Napier was still returning items. Link then watched Hobbs move items within the cart to access Napier's purse, open Napier's purse, and remove the altered merchandise. Link explained:

> I could see his hand going into the purse, and then I could see him taking merchandise out of it, and then he put some on the shelving around him in the register lane, and then he put some merchandise into bags, Walmart shopping bags that already had merchandise that was scanned in it.

(*Id*. at 97.) Hobbs then opened the purse and looked around inside it "making sure that all the merchandise was out of the purse." (*Id*. at 98.)

As Hobbs, Napier, and her children exited the store, Officer Long stopped them so that Link could ask them questions. Link and Officer Long took Hobbs and Napier back into the store to the loss prevention office. Link told Officer Long what he had observed. Officer Long then advised Hobbs and Napier of their *Miranda* rights. Hobbs admitted he took the merchandise "out of the purse and put them in the bag," (*id*. at 43), which was a Walmart bag "that contained merchandise that was already paid for." (*Id*. at 52.) Officer Long watched videos taken by security cameras, then arrested Hobbs for theft.

The State charged Hobbs with Class D felony theft and alleged he was an habitual

3

offender.[3]  A jury found Hobbs committed theft, and then Hobbs admitted being an habitual

offender.  The court imposed a six-year sentence.

## DISCUSSION AND DECISION

Hobbs alleges the evidence was insufficient to support his conviction.  Our standard

for reviewing such claims is well settled:

> When we review the sufficiency of the evidence to support a criminal
> conviction, we consider only the probative evidence and reasonable inferences
> therefrom supporting the verdict.  We neither reweigh the evidence nor assess
> witness credibility.  And unless no reasonable fact-finder could conclude the
> elements of the crime were proven beyond a reasonable doubt, we will affirm
> the conviction.  That is, we will hold the evidence sufficient 'if an inference
> may reasonably be drawn from it to support the verdict.'

*Buelna v. State*, 20 N.E.3d 137, 141 (Ind. 2014) (citations omitted).

Class D felony theft occurs when someone "knowingly or intentionally exerts

unauthorized control over property of another person, with intent to deprive the other person

of any part of its value or use."  Ind. Code § 35-43-4-2(a) (2009).  Link testified Napier put

unpurchased merchandise in her purse, she removed the packaging from that merchandise in

the grocery aisle, and Hobbs moved that unpurchased merchandise from Napier's purse to a

Walmart bag that contained purchased merchandise.  Napier and Hobbs had merchandise in

their bags that was not on the receipt of items for which they paid, and Hobbs admitted to

Officer Long that he moved the unpurchased merchandise from Napier's purse to the

Walmart bag.  That evidence is sufficient to support the jury's verdict.  *See*, *e.g.*, *Steen v.*

*State*, 987 N.E.2d 159, 163 (Ind. Ct. App. 2013) (evidence Steen took merchandise from

---

[3] Ind. Code § 35-50-2-8 (2005).

4

store without paying was sufficient to support conviction of theft), *trans. denied*.

Nevertheless, Hobbs asserts we should overturn his conviction because Officer Long's testimony was incredibly dubious. In support thereof, Hobbs notes Officer Long's testimony conflicted with Link's testimony about whether Officer Long watched the security video on the night of the incident and Officer Long's probable cause affidavit incorrectly indicated that Hobbs put items into, rather than removed them from, the purse.

> Under the incredible dubiosity rule, a court will impinge on the jury's responsibility to judge the credibility of the witness only when it is confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. When a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. However, we have recognized that the application of this rule is rare and limited to cases where the sole witness' testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*White v. State*, 846 N.E.2d 1026, 1032 (Ind. Ct. App. 2006) (quotations and citations omitted), *trans. denied*. In this case, there were two witnesses, and conflicts between witnesses' testimony do not meet the standard for incredible dubiosity. *See id.* ("the standard for dubious testimony is inherent contradiction, not contradiction between witnesses' testimony"). Furthermore, this is not a case in which there was "a complete lack of circumstantial evidence," as Hobbs and Napier exited the store with five items they had not purchased.

Hobbs' arguments regarding the conflicts between witnesses and the distance between Link and Hobbs as Link watched Hobbs move items from the purse to the bag and to the display shelves are requests that we reweigh the evidence and assess witness credibility, but

5

those are tasks that we must leave to the jury. *See id.* (noting defendant's arguments were requests to reweigh evidence and assess credibility, which we may not do). Accordingly, we affirm.

Affirmed.

BARNES, J., and PYLE, J., concur.