

FILED

Aug 23 2016, 7:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jay Lynn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 23, 2016

Court of Appeals Case No.
49A05-1601-CR-4

Appeal from the Marion Superior
Court

The Honorable David Hooper,
Magistrate

Trial Court Cause No.
49F08-1312-CM-79123

**Crone, Judge.**

## Case Summary

Jay Lynn appeals his convictions, following a jury trial, for battery and disorderly conduct, both as class B misdemeanors. He contends that the trial court committed fundamental error regarding a preliminary jury instruction and that the State did not present sufficient evidence to support his disorderly conduct conviction. Finding no fundamental error and concluding that the State presented sufficient evidence, we affirm.

## Facts and Procedural History

Andrew Johnson works as a privately contracted security guard at the Indianapolis North East social security office. Johnson's job can be described as "crowd control." Tr. at 87. His duties include sitting at a desk in the main lobby, directing people to take numbers, answering any minor questions that people may have, and if "someone gets loud … that's [his] job to escort them out of the building." *Id.* On December 12, 2013, sixty-one-year-old Lynn went to the social security office because "he had locked himself out of his online account." *Id.* at 92. When Lynn arrived, he told Johnson that "he spoke with somebody at the 1-800 number and was told that all he had to do was come in and show his I.D." *Id.* Johnson told Lynn that he would have to take a number and wait because other people were already waiting in line. Lynn became agitated and "very aggressive in his demeanor." *Id.* He "made it clear that he did not want to wait, he did not want to take a number." *Id.* at 93. When Johnson advised him that "he had to," Lynn asked to speak to a supervisor. *Id.*

[3] Lynn spoke to the assistant district manager, Robert Gramse. Gramse observed that Lynn was upset and angry that he had to take a number and wait. After Gramse explained that this was just office procedure, Lynn took a number and sat down to wait. Sometime thereafter, one of the clerks called Lynn's number three times, but Lynn did not respond because he was talking to someone. In accordance with protocol, the clerk moved on to the next number and helped the next individual instead. When Lynn realized that he had missed his number being called, he tried to proceed to the clerk's window. Johnson informed Lynn, "Your number was called, so actually you'll have to take another number." *Id*. at 95. Lynn became angry and loud and started yelling at Johnson. Johnson asked Lynn to "lower his voice," and Lynn refused, telling Johnson over and over again, "You don't tell me what to do. I tell you what to do." *Id*. at 97. Johnson told Lynn that if he did not lower his voice that he would have to leave the building. Lynn responded that he was "not going anywhere." *Id*. Because Johnson felt that Lynn was "disrupting operations in a federal facility," he told Lynn that it was time for him to leave, pointed toward the door, and began to escort Lynn out of the building. *Id*. at 99.

[4] When Johnson gently placed his hand under Lynn's elbow to direct him toward the door, Lynn "struck [Johnson's] forearm with his – with his closed hand knocking [Johnson's] hand away." *Id*. at 100. The closed-fist punch impacted Johnson's mid-forearm and gave him "a pretty good shock." *Id*. Lynn then raised the cane that he was holding in the other hand and tried to strike Johnson in the face. Johnson was able to use his arms to block the cane from

hitting him by bringing his hands up and grabbing Lynn's shirt lapels. The scuffle caused Johnson and Lynn to both fall to the ground, with Johnson ending up on top of Lynn. Johnson told Lynn that he was being detained and needed to put his hands behind his back so that he could be handcuffed. Lynn refused and instead placed his hands underneath his body. Johnson asked Lynn approximately thirty or forty times to place his hands behind his back, but Johnson refused. Lawrence police officers arrived, used "a dry stun" tasering technique to obtain Lynn's compliance with handcuffing, and arrested Lynn. *Id*. at 106.[1]

[5] The State charged Lynn with class A misdemeanor battery and class B misdemeanor disorderly conduct. Following a trial, the jury found Lynn guilty of battery and disorderly conduct, both as class B misdemeanors. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not commit fundamental error in instructing the jury.

[6] We address first Lynn's assertion that the trial court committed fundamental error in instructing the jury. Specifically, Lynn challenges Preliminary

---

[1] Johnson explained,

> a dry stun is where you activate, uh, the – taser mechanism so that it creates the arc of electricity that flows into the body. They didn't shoot him with any of the prongs, they just placed it against his body, activated the electrical arc and that caused him to bring his arms out.

Tr. at 106.

Instruction 4. Because he admittedly failed to make a contemporaneous objection to the instruction, he argues that it amounted to fundamental error. Our supreme court recently explained,

> Because instructing the jury is a matter within the sound discretion of the trial court, we will reverse a trial court's decision to tender or reject a jury instruction only if there is an abuse of that discretion. We determine whether the instruction states the law correctly, whether it is supported by record evidence, and whether its substance is covered by other instructions. Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case.
>
> Where, as here, the defendant failed to preserve an alleged instructional defect, the objection is waived, and reversal is warranted only in instances of fundamental error. Error is fundamental if it is a substantial blatant violation of basic principles and where, if not corrected, it would deny a defendant fundamental due process. This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in egregious circumstances that made a fair trial impossible.

*Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016) (citations and quotation marks omitted).

[7]    Lynn concedes that Preliminary Instruction 4 followed Indiana Pattern Criminal Jury Instruction 1.0700,[2] which provides how the jury is to be instructed as to the charges.  However, Lynn complains that the trial court here improperly instructed the jury by including the affirmation language from the original charging informations.  Specifically, Preliminary Instruction 4 provided in relevant part:

> In this case, the State of Indiana has charged the Defendant with:
>
> Count I:      Battery
>                    A Class A Misdemeanor
>
> Count II:     Disorderly Conduct
>                    A Class B Misdemeanor
>
> The Charges Read as Follows:
>
> Count 1, Battery, Class A Misdemeanor
>
> The undersigned affiant does hereby swear or affirm under the penalties of perjury that:
>
> On or about 12/12/13, in Marion County, State of Indiana, the following named defendant, Jay Lynn, did knowingly in a rude, insolent or angry manner touch Andrew Johnson, another person, and further that said touching resulted in bodily injury to the other person, specifically: pain.
>
> All of which is contrary to the laws of the State of Indiana.

---

[2]  That instruction states "In this case, the State of Indiana has charged the Defendant with [Count 1: (*insert Count 1*), Count 2: (*insert Count 2*), etc.]  The charge(s) read(s) as follows: _____ [*insert the Charge*]."

Count 2, Disorderly Conduct, Class B Misdemeanor

The undersigned affiant does hereby swear or affirm under the penalties of perjury that:

On or about 12/12/13, in Marion County, State of Indiana, the following named defendant, Jay Lynn, did recklessly, knowingly or intentionally: engage in fighting or in tumultuous conduct; …

All of which is contrary to the laws of the State of Indiana.

Appellant's App. at 76-78 (captions and underlining omitted).

[8] Lynn asserts that the "swear or affirm under the penalties of perjury" language invaded the province of the jury and deprived him of due process because that language constituted a "tacit expression of support for the State's position" regarding "the ultimate question of Lynn's guilt." Appellant's Br. at 14-15. Thus, he argues, the trial court's failure to redact the affirmation language from the instruction amounted to fundamental error. We disagree.

[9] In addition to Preliminary Instruction 4, the jury was specifically instructed that "[t]he charges which have been filed are the formal methods of bringing the Defendant to Trial. The filing of charges … is not to be considered by you as any evidence of guilt." Appellant's App. at 84. The jurors were instructed that a person charged with a crime is presumed to be innocent and that the State bore the burden to prove each element of the crime charged beyond a reasonable doubt. *Id*. at 85. The jurors were also told to consider the instructions as a whole and that they were the exclusive judges of the evidence

and facts as they found them. *Id*. at 87, 105, 109. Accordingly, we conclude that Preliminary Instruction Number 4 did not invade the province of the jury and that the affirmation language did not so affect the entire charge that the jury was misled. Indeed, the jury's decision to find Lynn guilty of the lesser-included class B misdemeanor battery rather than the charged A misdemeanor indicates that the jury was not substantially influenced by the affirmation language such that Lynn was deprived of a fair trial. Under the circumstances, Lynn has failed to demonstrate fundamental error.

[10] Nonetheless, we are compelled to note that, as a general matter, we think that such affirmation language has no place in jury instructions and that the best practice is for trial courts to redact such language. Inclusion of affirmation language of this type raises several potential problems, including that it gives the semblance of attribution to the trial court or to an unknown affiant, who may or may not be available for cross-examination, as to the veracity of the factual basis for the charges. This is undesirable and completely avoidable. Thus, while the pattern jury instructions do not clearly require redaction, we strongly advise it.

## Section 2 – The State presented sufficient evidence to support Lynn's disorderly conduct conviction.

[11] Lynn next contends that the State presented insufficient evidence to support his disorderly conduct conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable

inferences drawn therefrom that support the verdict and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* In short, if the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb the conviction. *Id.* at 500.

[12] To prove the offense of class B misdemeanor disorderly conduct as charged here, the State was required to prove that Lynn recklessly, knowingly, or intentionally engaged in fighting or in tumultuous conduct. *See* Ind. Code § 35-45-1-3(a)(1). Although our legislature has not statutorily defined the term "fighting," this Court has stated that the term "fight" refers to "a '[h]ostile encounter; either physical or verbal in nature.'" *J.S. v. State*, 843 N.E.2d 1013, 1016 (Ind. Ct. App. 2006) (quoting BLACK'S LAW DICTIONARY 565 (5th ed. 1979)), *trans. denied*.

[13] Johnson and Gramse testified that Lynn was upset and angry that he had to follow procedure by taking a number and waiting his turn. Then, when Lynn failed to respond to his number being called, causing him to lose that turn, he became extremely agitated and began yelling at Johnson. Johnson requested several times for Lynn to quiet down, but Lynn refused. After Johnson instructed Lynn that he needed to leave the building and tried to escort him to the door by gently placing his hand under Lynn's elbow, Lynn became aggressive and punched Johnson's forearm. Lynn also tried to strike Johnson in the face with his cane, causing Johnson to bring his hands up and grab Lynn's shirt lapels in order to defend himself. When the two men subsequently

fell to the ground, Lynn immediately rolled over onto his hands to prevent Johnson from handcuffing him. Lynn remained defiant for approximately fourteen minutes until the local police arrived, tased him, and arrested him.

[14] This evidence unquestionably supports a reasonable inference that Lynn engaged in a hostile encounter with Johnson that was both physical and verbal in nature. Thus, the evidence is sufficient to establish that Lynn engaged in fighting. His arguments on appeal are merely a request that we reweigh the evidence in his favor, and we will not. The State presented sufficient evidence to sustain Lynn's conviction for disorderly conduct.

[15] Affirmed.

Kirsch, J., and May, J., concur.