## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2017, 8:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Virginia C. Bryant, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 9, 2017 <br><br> Court of Appeals Case No. <br> 17A03-1605-CR-1151 <br><br> Appeal from the <br> DeKalb Superior Court <br><br> The Honorable <br> Kevin P. Wallace, Judge <br><br> Trial Court Cause No. <br> 17D01-1504-F3-5 |

**Kirsch, Judge.**

[1] Virginia C. Bryant ("Bryant") was convicted after a jury trial of arson[1] as a Level 3 felony and sentenced to four years executed. She appeals raising the following restated issue for our review: whether the trial court committed fundamental error in making certain statements to the jury during voir dire and in instructing the jury.

[2] We affirm.

## Facts and Procedural History

[3] On January 22, 2015, Fannie Mast ("Mast"), who lived across the street from the building that Bryant used for her antiques business and in which Bryant lived, was working outside her house in Waterloo, DeKalb County, Indiana, when she saw smoke coming out of the roof area of the building belonging to Bryant. As the smoke was coming out of the building, Mast observed Bryant leaving the building "real fast like." *Tr.* at 156. Mast saw Bryant drive away in a van "in a hurry." *Id.* Mast had lived across the street from Bryant for about two years, and Mast believed that Bryant drove off faster than she usually did. *Id.* As Bryant left, the smoke was coming out along the eaves of the building in two different places. Mast saw flames coming from the area where the antiques shop was located. Mast called the fire department.

---

[1] *See* Ind. Code § 35-43-1-1(a)(3).

[4] Volunteer firefighter Michael Long ("Long") was the first firefighter to respond to the scene. While at his house, which was four blocks away, Long observed the smoke in the sky from the Bryant fire. Once at the scene, firefighters tried to enter the building, but after concluding that there were no occupants in the building, the firefighters decided to treat the fire defensively by fighting it from the outside. While doing this, the wind shifted, and before Long could put his mask on, he suffered smoke inhalation. Long's chest pains from the smoke inhalation got worse, and he was transported to the hospital, after the emergency medical team noticed an irregularity in his heartbeat, and had to spend several hours in the emergency room.

[5] Mike Vogely ("Vogely"), who worked for the State Fire Marshal's Office, investigated the fire to determine its origin and cause. Vogely entered the building and went into the kitchen area, where he "picked up a hint of an odor," which he believed smelled like gasoline. *Id.* at 225. He found a red gasoline can in a storage closet and a blue kerosene can that smelled of gasoline near some refrigerators. Based on the evidence that there were multiple areas of origin, but no communication[2] between these points of origin, Vogely determined that the evidence indicated that the fire had been set intentionally. *Id.* at 232.

---

[2] Vogely defined "communication" as the line of travel that a fire takes or the connection between two points of origin. *Tr.* at 225-26.

[6] The contents of the building included the inventory of the antiques shop. This inventory was scheduled to be auctioned pursuant to a court order as a result of the dissolution of the marriage between Bryant and her husband. The inventory was to be auctioned online over the course of twenty to twenty-five auctions that were estimated to bring in about $3,000-$5,000 per auction.

[7] During the investigation of the fire by the law enforcement, DeKalb County Sheriff's Detective Benjamin Rice ("Detective Rice") learned that, on February 16, 2015, Bryant was stranded on the side of the road with her van in a ditch. When Detective Rice met Bryant, she was attempting to get the van out of the ditch. Detective Rice told Bryant that he knew she was the owner of the building and wanted to talk to her about the fire. Bryant responded that her "eye doctor told her not to talk to the police," which Detective Rice found to be a bizarre response. *Id*. at 289. Detective Rice offered to call a tow truck for Bryant and transport her to a location to get warm after being outside in the cold, but she declined. About thirty to thirty-five minutes later, Bryant was finally able to drive her van out of the ditch, and she drove away. On February 23, 2015, Bryant went to the sheriff's department and spoke with Detective Rice. On March 11, 2015, Bryant called the auctioneer to inform him that the building had burned and that he should check on his insurance. *Id*. at 272. She also told the auctioneer that she hoped her husband had insurance on his property within the building because she was not required to do so under the dissolution decree. *Id*.

[8] On April 30, 2015, the State charged Bryant with arson as a Level 3 felony. A jury trial was held on March 23-24, 2016. During voir dire, the trial court made a statement informing the potential jurors of the State's allegations against Bryant. *Id*. at 52. Bryant did not object to this statement. *Id*. After a jury was chosen and before the testimony began, the trial court gave preliminary instructions to the jury. As part of Preliminary Instruction 4 ("Instruction 4"), the trial court read the charging information. *Id*. at 129-30. Bryant did not object to this instruction. *Id*. At the conclusion of the trial, the jury found Bryant guilty as charged, and she was sentenced to four years executed. Bryant now appeals.

## Discussion and Decision

[9] Bryant contends that the trial court erred both in statements made during voir dire and in instructing the jury. Trial courts have broad discretionary power in regulating the form and substance of voir dire. *Gibson v. State*, 43 N.E.3d 231, 237 (Ind. 2015), *cert. denied*, 137 S. Ct. 54 (2016). The manner of instructing a jury is left to the sound discretion of the trial court. *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*. We review the trial court's decision only for an abuse of that discretion. *Id.*

[10] Generally, a contemporaneous objection is required to preserve an issue for appeal. *McKinley v. State*, 45 N.E.3d 25, 28 (Ind. Ct. App. 2015), *trans. denied*. However, Bryant did not object to the statements made during voir dire or to Instruction 4. "Consequently, we 'will only reverse the trial court if the trial

court committed error that was fundamental.'" *Rosales v. State*, 23 N.E.3d 8, 11 (Ind. 2015) (quoting *Hopkins v. State*, 759 N.E.2d 633, 638 (Ind. 2001)). The fundamental error exception is extremely narrow and applies only when an error constitutes a blatant violation of basic principles of due process. *McKinley*, 45 N.E.3d at 28. "The error must be 'so prejudicial to the rights of a defendant a fair trial is rendered impossible.'" *Id*. (quoting *White v. State,* 846 N.E.2d 1026, 1033 (Ind. Ct. App. 2006), *trans. denied*). When determining whether an incorrect jury instruction amounts to fundamental error, we do not look only to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument and other instructions. *Id*. There is no due process violation where all of the information, considered as a whole, does not mislead the jury as to a correct understanding of the law. *Id*. at 28-29.

[11] Bryant initially argues that the trial court committed fundamental error during voir dire when it made certain statements regarding the nature of the case to the potential jurors. She asserts that these statements did not just inform the potential jurors of the general nature of the case; instead, she alleges that the trial court stated several elements of the crime as established facts. Because the facts contained in the statements made by the trial court were facts that needed to be proven beyond a reasonable doubt, Bryant claims that the trial court's comments deprived her of due process and invaded the province of the jury.

[12] During voir dire, the trial court made the following statements to the prospective jurors:

On January 22, 2015, an antique store with attached residence, located in the 100 block of South Wayne Street in Waterloo, Indiana, burned to the ground. The State of Indiana accuses [Bryant], the Defendant, of knowingly or intentionally starting the fire. She denies that allegation. The State believes that [Bryant] owned the building that was destroyed. Inside the building were antiques with an appraised value of over $100,000. According to an order, by Judge Monte Brown in a dissolution of marriage case, the antiques in the building were to be auctioned with one-half of the proceeds going to [Bryant] and one-half of the proceeds going to . . . her ex-husband.

*Tr*. at 52. Bryant argues that these statements by the trial court stated as established facts several elements of the crime with which she was charged. We disagree.

[13]    These statements by the trial court merely informed the prospective jurors of what the State believed had occurred and what the State would need to prove in order to convict Bryant of arson as a Level 3 felony. Although Bryant argues that the trial court stated elements of the crime as established facts, it is clear from the language used that the trial court was only stating what the State believed were the facts of the case. We do not find that these statements amounted to fundamental error and rendered a fair trial impossible.

[14]    Bryant next argues that the trial court committed fundamental error when it gave Instruction 4. She contends that language in Instruction 4 that stated that Detective Rice "verified" the charges deprived her of the due process of law and her right to be presumed innocent. *Appellant's Br*. at 12. Bryant asserts that

such language coming from the trial court caused her to be unable to have a fair trial because the language essentially told the jury that she was guilty.

[15] In its preliminary instructions to the jury, the trial court read Instruction 4, which stated:

> This is a criminal case brought by the State of Indiana against Virginia C. Bryant. The case was commenced with the filing of an Information charging the Defendant with Arson, a Level 3 Felony.
>
> Omitting the formal parts, the charge reads as follows:
>
> "Detective Ben Rice 'states and verifies' that on or about Thursday, January 22, 2015, in DeKalb County, Indiana, Virginia C. Bryant, by means of fire, explosive or destructive device, knowingly or intentionally damaged property of another person, Cedric Bryant, without his or her consent if the pecuniary loss is at least five thousand dollars ($5000.00). Additionally, the offense resulted in bodily injury to any person other than a defendant, who was firefighter Michael Long, and the injury was smoke inhalation. All of which is contrary to the form of the statute in such cases made and provided and against the peace of dignity of the State of Indiana."

*Id*. at 129-30; *Appellant's App*. at 53. Bryant contends that the "states and verifies" language invaded the province of the jury and deprived her of a fair trial because it essentially informed the jury she was guilty. We disagree.

[16] Instruction 4 was a repetition of the charging information. In addition to Instruction 4, the jury was also instructed that it should not form or express any

conclusion or judgment about the outcome of the case until all of the evidence had been presented. *Tr.* at 128. The trial court informed the jury that the case was commenced with the filing of an information and the charge is "the formal method of bringing the Defendant to trial." *Id.* at 130. Additionally, the jury was told that "[t]he filing of a charge or the Defendant's arrest is not to be considered . . . as any evidence of guilt" and that the Defendant was presumed to be innocent. *Id.* The trial court also instructed the jury that the State must prove each element of the crime beyond a reasonable doubt to overcome the presumption of innocence. *Id.* at 131. The jury was further instructed to consider the instructions as a whole and not to "single out any certain sentence or any individual point or instruction and ignore the others." *Id.* at 129. We, therefore, conclude that Instruction 4 did not invade the province of the jury and that the challenged language did not mislead the jury so as to render a fair trial impossible.[3]

[17] Neither the statements made by the trial court during voir dire nor Instruction 4 invaded the province of the jury and made a fair trial impossible. We conclude that the trial court did not commit fundamental error.

---

[3] We note, however, that a recent case from this court disapproved of similar language in a preliminary instruction. In *Lynn v. State*, 60 N.E.3d 1135 (Ind. Ct. App. 2016), *trans. denied*, the appellant claimed that language that stated that the affiant in the charging information "does hereby swear or affirm under the penalties of perjury" invaded the province of the jury and deprived him of due process. *Id.* at 1139. However, although this court stated that such affirmation language had "no place in jury instructions and that the best practice is for trial courts to redact such language," it concluded, as we do here, that the appellant had failed to demonstrate fundamental error due to the other instructions given to the jury. *Id.*

Affirmed.

Robb, J., and Barnes, J., concur.