# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 18 2020, 10:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Megan E. Shipley
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jacob McIntosh,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 18, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2456<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa Borges, Judge<br><br>Trial Court Cause No.<br>49G04-1801-MR-1900 |

**Pyle, Judge.**

## Statement of the Case

[1] Jacob McIntosh ("McIntosh") appeals his conviction, following a jury trial, of murder.[1] His sole contention is that the trial court committed fundamental error when instructing the jury. Finding no fundamental error, we affirm the trial court's judgment.

[2] We affirm.

## Issue

Whether the trial court committed fundamental error when instructing the jury.

## Facts

[3] In January 2018, twenty-three-year-old McIntosh lived at his mother's ("Mother") house. Mother's boyfriend, Jesse Daniels ("Daniels") and McIntosh's two brothers, nineteen-year-old Jared McLain and twenty-five-year-old Christopher McIntosh ("Christopher"), also lived at Mother's house. In addition, McIntosh's girlfriend, Samantha England ("England") spent several nights a week at Mother's house.

[4] McIntosh and England went to a neighborhood party on the evening of January 12, 2018. When they left the party at approximately 2:30 a.m. the following morning, McIntosh and England were both intoxicated. As they entered

---

[1] IND. CODE § 35-42-1-1.

Mother's home, McIntosh and England heard Mother and Daniels, who were both also intoxicated, arguing in the living room at the back of the house. Mother and Daniels frequently argued about the volume of the television when Mother wanted to go to sleep.

[5] McIntosh and England entered the living room, and McIntosh attempted to talk to Daniels and calm him down. Daniels, however, punched McIntosh in the face and placed him in a headlock. When England noticed that McIntosh's face was turning purple, England left the room to wake up McIntosh's brothers.

[6] While England was out of the room, McIntosh broke free of the headlock and knocked Daniels to the floor. McIntosh then went upstairs to his bedroom and came back to the living room with a handgun in each hand. Daniels was still on the floor, and Mother was sitting next to him. McIntosh walked over to Daniels, stuck the barrel of one of the guns under Mother's arm, and shot Daniels in the face nine times. Daniels died as a result of the gunshot wounds.

[7] England and Christopher heard the shots and ran into the living room. McIntosh gave Christopher the two guns and told Christopher to call the police. When Indianapolis Metropolitan Police Department officers arrived at the scene, McIntosh was lying face-down on the floor. An officer handcuffed McIntosh and took him downtown to the police department. Four days later, the State charged McIntosh with murder.

[8] At the beginning of McIntosh's trial, the trial court instructed the jurors as follows:

On your chairs you'll find a three-ring binder. Inside that binder is a copy of the preliminary instructions that I'm required to read to you. You're welcome to follow along with me or just to listen, whichever you choose to do. They're for your use during deliberations[.] [Preliminary Instruction 5 ("Preliminary Instruction 5") states that:] [i]n this case the State of Indiana has charged the Defendant, Jacob McIntosh with Count I, murder, a felony. And that count reads as — or the charge reads as follows — and I'll omit the caption. Count I, on or about January 13, 2018, Jacob McIntosh, did knowingly or intentionally kill another human being to wit Jesse Daniels. All of which is contrary to statute and against the peace and dignity of the State of Indiana[.]

(Tr. Vol. 2 at 150-151, 153).

[9] The hard copy of Preliminary Instruction 5 that was included in the jurors' binders further stated that Deputy Prosecuting Attorney Anne E. Frangos was the affiant and that Terry R. Curry was the Marion County Prosecutor.

[10] The trial court also read the jury the following preliminary instructions:

Under the Constitution of Indiana, the jury has the right to determine both the law and the facts[.] Under the law of this state, a person charged with a crime is presumed to be innocent[.] To overcome the presumption of innocence, the State must prove the defendant guilty of each element of the crime charged beyond a reasonable doubt[.] The charge that has been filed is the formal method of bringing the defendant to trial. The filing of the charge or the defendant's arrest is not to be considered by you as any evidence of guilt[.] You are the exclusive judges of the evidence, which may be either witness testimony or exhibits[.]

(Tr. Vol. 2 at 152-54). McIntosh did not object to any of the preliminary instructions.

[11] During his opening statement, defense counsel told the jurors as follows: "[T]here is no disagreement that [McIntosh] shot [Daniels], but we believe that at the end of trial that you will see that [McIntosh] was acting under sudden heat." (Tr. Vol. 2 at 160).

[12] During closing argument, the State explained that "because the defense has raised the issue of voluntary manslaughter and sudden heat, not only does the State have to prove that [McIntosh] knowingly or intentionally killed [Daniels], but we also have to disprove that [McIntosh] was acting under sudden heat." (Tr. Vol. 3 at 122).

[13] Following closing arguments, the trial court instructed the jury as follows: "[y]ou are to consider all of the instructions, both preliminary and final, together. Do not single out any certain sentence on any individual point or instruction and ignore the others." (App. Vol. 2 at 119). The trial court further instructed the jurors that they "ha[d] the right to determine both the law and the facts." (App. Vol. 2 at 120).

[14] The jury convicted McIntosh of murder. McIntosh now appeals his conviction.

## Decision

[15] McIntosh argues that the trial court committed fundamental error when instructing the jury. The manner of instructing a jury is left to the sound

discretion of the trial court. *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*. We review the trial court's decision only for an abuse of discretion. *Id.*

[16] Generally, a contemporaneous objection is required to preserve an issue for appeal. *McKinley v. State*, 45 N.E.3d 25, 28 (Ind. Ct. App. 2015), *trans. denied*. Here, however, McIntosh acknowledges that he did not object to Preliminary Instruction 5. Consequently, we will only reverse the trial court if the trial court committed fundamental error. *See Rosales v. State*, 23 N.E.3d 8, 11 (Ind. 2015). The fundamental error exception is extremely narrow and applies only when an error constitutes a blatant violation of basic due process principles. *McKinley*, 45 N.E.3d at 28. The error must be so prejudicial to the rights of a defendant that a fair trial is impossible. *Id.*

[17] Here, McIntosh argues that the trial court committed fundamental error when it gave Preliminary Instruction 5. McIntosh specifically contends that the hard copy of the instruction, which described deputy prosecuting attorney Ann Frangos as an affiant in conjunction with the inclusion of Prosecutor Terry Curry's name indicated that Prosecutor Curry endorsed the charges. (McIntosh's Br. 9). According to McIntosh, such language coming from the trial court "deprived [him] of his constitutional right to a fair trial by removing the presumption of innocence and invading the province of the jury to determine [his] guilt or innocence." (McIntosh's Br. 9). We disagree.

[18] When determining whether a jury instruction amounts to fundamental error, we do not look only to that instruction in isolation. *McKinley*, 45 N.E.2d at 28. Rather, we look at the instruction in the context of all relevant information given to the jury, including closing argument and other instructions. *Id.* There is no due process violation where all of the information, considered as a whole, does not mislead the jury as to a correct understanding of the law. *Id.*

[19] First, Preliminary Instruction 5 was essentially a repetition of the charging information. Further, in addition to Preliminary Instruction 5, the jurors were instructed that the charge that had been filed was the formal method of bringing McIntosh to trial and that they should not consider the filing of the charge or McIntosh's arrest as any evidence of guilt. The trial court also instructed the jurors that a person charged with a crime is presumed to be innocent and that the State had the burden to prove each element of the crime charged beyond a reasonable doubt. The trial court further instructed the jurors that they were the exclusive judges of the evidence and that they had the right to determine both the law and the facts. In addition, the trial court instructed the jurors to consider all of the instructions, both preliminary and final, together and "not [to] single out any certain sentence on any individual point or instruction and ignore the others." (App. Vol. 2 at 119).

[20] Considering Preliminary Instruction 5 in the context of these additional jury instructions, we conclude that Preliminary Instruction 5 did not invade the province of the jury and that the challenged language did not mislead the jury so as to render a fair trial impossible. This is especially true, where, as here, the

language about which McIntosh complains was included only in the jury's instruction binder and was not read to the jury. Accordingly, the trial court did not commit fundamental error in instructing the jury.[2]

[21] Affirmed.

Kirsch, J., and Tavitas, J., concur.

---

[2] McIntosh is correct that this Court has disapproved of instructional language that stated that the affiant in the charging information "d[id] hereby swear or affirm under the penalties of perjury[.]" *See Lynn v. State*, 60 N.E.3d 1135, 1139 (Ind. Ct. App. 2016), *trans. denied*. However, Preliminary Instruction 5 does not include such language. We further note that although we stated that the affirmation language in *Lynn* had "no place in jury instructions and that the best practice [was] for trial courts to redact such language," we concluded, as we do here, that Lynn had failed to demonstrate fundamental error due to the other instructions given to the jury. *Id*.